Mary Anne LAREMONT–LOPEZ, Plaintiff,

v.

SOUTHEASTERN TIDEWATER OPPORTUNITY CENTER, Defendant.

Mary M. JOHNSON, Plaintiff,

v.

DEPARTMENT OF PARKS AND RECREATION FOR THE CITY OF CHESAPEAKE, Defendant.

Lal M'MALANI, Plaintiff,

v.

NEWPORT NEWS SHIPYARD AND DRYDOCK CO., Defendant.

Myra T. PLUMMER, Plaintiff,

v.

J. Curtis FRUIT, Clerk of Circuit Court of the City of Virginia Beach, Defendant.

Civil Action Nos. 2:96cv1202, 2:96cv1213, 4:97cv7, 2:97cv203.

United States District Court, E.D. Virginia, Norfolk Division.

June 3, 1997.

Thomas Francis Hennessy, III, Hardee & Hennessy, P.C., Chesapeake, VA, for MaryAnne Laremont–Lopez.

James A. Gorry, III, John Hume Taylor, Jr., Taylor & Walker, P.C., Norfolk, VA, for Southern Tidewater Opportunity Center.

Mary M. Johnson, Cheseapeake, VA, pro se.

Thomas Jeffrey Salb, Breeden, MacMillan & Green, PLC, Norfolk, VA, for Dept. of Parks and Recreation for the City of Chesapeake.

Lal M'Malani, Huntington Beach, CA, pro se.

Dean Clement Berry, Newport News Shipbuilding & Dry Dock Co., Newport News, VA, for Newport News Shipyard and Drydock Co.

Myra T. Plummer, Virginia Beach, VA, pro se.

### *ORDER*

MORGAN, District Judge.

Between December 1996 and February 1997, complaints signed by the plaintiffs, ostensibly proceeding *pro se,* were filed in the above-styled cases. Based upon representations made to the Clerk's office and the content of certain documents, it appeared that the complaints were in fact drafted by the attorneys of a local law firm (the "Attorneys").[1] Concerned that this practice was inconsistent with the Federal Rules of Civil Procedure and the Local Rules of the United States District Court for the Eastern District of Virginia, which incorporate the disciplin-

---

1. There is insufficient evidence to find that the Attorneys in question intentionally or knowingly violated any of the Court's procedural, disciplinary, or ethical rules. Therefore, the Attorneys in question are not identified in this order. Furthermore, the Court notes that certain other lawyers, who had no part in the conduct discussed in this opinion, subsequently entered appearances in behalf of the plaintiffs in some of these cases.

ary rules and ethical considerations of the Virginia Code of Professional Responsibility, the Court ordered the Attorneys to show cause why they should not be found in contempt of this Court.

On April 30, 1997, the Court held a hearing at which the Attorneys, represented by counsel, filed a brief, an affidavit, and numerous exhibits in response to the Court's Show Cause Order. Having considered the Attorneys' submissions and counsel's oral argument, the Court FINDS that the evidence is insufficient to establish that the Attorneys intentionally misled the Court or knowingly violated any of the Court's procedural, disciplinary, or ethical rules. Accordingly, the Court does not FIND the Attorneys' conduct to be contemptuous and declines to impose sanctions or initiate disciplinary proceedings.

Nevertheless, the Court considers it improper for lawyers to draft or assist in drafting complaints or other documents submitted to the Court on behalf of litigants designated as *pro se*. During the Show Cause Hearing, it was represented to the Court that this practice of ghost-writing is not unique to the Attorneys and cases at hand.[2] The Court has previously suspected that some *pro se* plaintiffs were receiving the assistance of counsel, but these suspicions have not been confirmed. This Court is unaware that this practice is as widespread as represented by counsel at oral argument and by affidavit. This Opinion and Order will establish this Court's view of the practice under the facts as recited. *See Johnson v. Board of County Comm'rs*, 868 F.Supp. 1226 (D.Colo.1994) (publishing an opinion condemning ghostwriting in order to provide notice to the bar); *See also Young v. United States ex rel. Vuitton et Fils, S.A.*, 481 U.S. 787, 795–796, 107 S.Ct. 2124, 2131–32, 95 L.Ed.2d 740 (1987) (citing *Gompers v. Buck's Stove & Range Co.*, 221 U.S. 418, 450, 31 S.Ct. 492, 501, 55 L.Ed. 797 (1911); *Michaelson v. United States ex rel. Chicago, St. P., M. & O. Ry. Co.*, 266 U.S. 42, 45 S.Ct. 18, 69 L.Ed. 162

(1924) (the ability to punish for contempt of judicial orders is inherent in all courts and is essential to the administration of justice and the independence of the Judiciary)).

## I. FACTS

The following facts are derived from representations made to the Court in the Attorneys' brief and during the Show Cause Hearing.

In each case, the plaintiffs had filed charges of employment discrimination with the Equal Employment Opportunity Commission ("EEOC") and had received right to sue letters from the EEOC. Seeking legal representation and confronted with an approaching filing deadline, the plaintiffs were referred to the Attorneys by a former client or another lawyer who declined the case.

The extent of the Attorneys' involvement varied with each case. In all four cases, the Attorneys drafted the complaints filed in this Court. In at least three cases, the Attorneys were paid a flat fee for their limited representation of the plaintiffs. In some cases the representation included unsuccessful efforts to resolve the employee disputes prior to filing the complaints. In some cases the Attorneys' courier filed the complaints and even paid the filing fee out of their Law Firm's escrow account. In one case, the Attorneys effectuated service of process on the defendant. Despite their participation in these cases, in only one case did the Attorneys ever make a formal appearance as the counsel of record, and that was after the complaint was filed.

## II. Analysis.

■ The Court believes that the practice of lawyers ghost-writing legal documents to be filed with the Court by litigants who state they are proceeding *pro se* is inconsistent with the intent of certain procedural, ethical, and substantive rules of the Court. While there is no specific rule that prohibits ghost-

---

**2.** The Attorneys presented an affidavit from a member of the bar who defends ghost-writing in circumstances where the statute of limitations may otherwise bar a seemingly meritorious cause. It is not clear that the statute was a factor in each of the four cases before this Court.

In such cases, however, the better practice would be for counsel to acknowledge draftsmanship of the complaint (or other pleading) by signing and filing it and simultaneously filing a motion to withdraw as counsel accompanied by an appropriate explanation and brief.

writing, the Court believes that this practice (1) unfairly exploits the Fourth Circuit's mandate that the pleadings of *pro se* parties be held to a less stringent standard than pleadings drafted by lawyers, *see, e.g., White v. White*, 886 F.2d 721, 725 (4th Cir.1989) (citations omitted), (2) effectively nullifies the certification requirement of Rule 11 of the Federal Rules of Civil Procedure ("Rule 11"), and (3) circumvents the withdrawal of appearance requirements of Rule 83.1(G) of the Local Rules for the United States District Court for the Eastern District of Virginia ("Rule 83.1(G)").

### A. Pro Se Pleadings.

 However unartfully drafted, *pro se* pleadings are held to less stringent standards than formal pleadings drafted by lawyers. *Haines v. Kerner*, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972); *White*, 886 F.2d at 725. This less stringent standard is a necessary accommodation to those unable to obtain the assistance of one trained in the law. Under this standard, "a *pro se* complaint must survive a motion to dismiss under Rule 12(b)(6) for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Lugo v. I.N.S.*, 950 F.Supp. 743, 745 (E.D.Va.1997) (*quoting Haines*, 404 U.S. at 521, 92 S.Ct. at 596). *Pro se* pleadings are also granted a degree of indulgence not extended to lawyers when determining whether to impose monetary sanctions pursuant to Rule 11. *See Harmon v. O'Keefe*, 149 F.R.D. 114, 116 (E.D.Va.1993) (finding Rule 11 sanctions appropriate despite the less stringent *pro se* status of the plaintiff).

When, however, complaints drafted by attorneys are filed bearing the signature of a plaintiff outwardly proceeding *pro se*, the indulgence extended to the *pro se* party has the perverse effect of skewing the playing field rather than leveling it. The *pro se* plaintiff enjoys the benefit of the legal counsel while also being subjected to the less stringent standard reserved for those pro-

ceeding without the benefit of counsel. This situation places the opposing party at an unfair disadvantage, interferes with the efficient administration of justice, and constitutes a misrepresentation to the Court. *See Johnson*, 868 F.Supp. at 1231 (ghost-writing is *ipso facto* lacking in candor and an evasion of the obligations imposed on counsel by statute and rule); *Ellis v. State of Maine*, 448 F.2d 1325 (1st Cir.1971) (same).

### B. Rule 11

 In relevant part, Rule 11 requires that "[e]very pleading, written motion, and other paper shall be signed by at least one attorney of record in the attorney's individual name, or, if the party is not represented by an attorney, shall be signed by the party." Fed R. Civ. P. 11(a). The signature requirement of Rule 11 imposes upon the signer the obligation to conduct a reasonable inquiry to determine that (1) it is not presented for an improper purpose, (2) the positions taken are warranted by existing law or a nonfrivolous change in the law, and (3) the document is well grounded in fact. *Jackson v. Law Firm of O'Hara, Ruberg, Osborne and Taylor*, 875 F.2d 1224, 1229 (6th Cir.1989). The purpose of Rule 11 is to deter conduct that frustrates the just, speedy, and inexpensive determination of civil actions.[3]

The Attorneys in this case maintain that they were retained by the plaintiffs for the discrete limited purpose of drafting the complaints. They argue that at the time the complaints were filed their representation of the plaintiffs had terminated, and thus, it was appropriate for the plaintiffs to sign the pleadings. In short, the Attorneys' position is that they did not sign the pleadings because they no longer represented the plaintiffs.

The Attorneys' reasoning, while not at odds with the plain language of Rule 11, undermines the purpose of the signature certification requirement of the rule. *See Ellis*, 448 F.2d at 1328 (condemning the practice of lawyers drafting, but not signing, habeas corpus petitions for prisoners, and thus escaping

---

**3.** The Rule retains the principle that attorneys and *pro se* litigants have an obligation to the court to refrain from conduct that frustrates the

aims of Rule 1. Fed.R.Civ.P. 11, advisory committee notes to the 1993 Amendments.

the obligations of Rule 11). Who should the Court sanction if claims in the complaint prove to be legally or factually frivolous, or filed for an improper purpose? Rule 11 prohibits the imposition of monetary sanctions against a represented party for filing legally frivolous claims. Fed R. Civ. P. 11(c)(2)(A). Thus, although the plaintiffs have signed the complaints, they may assert immunity from sanctions because they retained counsel to draft the complaints. Moreover, the Court could encounter legal and factual obstacles if it attempted to impose sanctions on the Attorneys based upon Rule 11 considerations.[4] In the past, this Court has suspected, but has been unable to confirm that some plaintiffs outwardly proceeding *pro se* were in fact receiving the assistance of trained legal counsel. Even if the Court is able to determine who is responsible for drafting the complaints, the additional inquiry necessitated by the lawyers' failure to sign the pleadings interferes with the "just, speedy, and inexpensive determination" of those actions. Fed.R.Civ.P. 1.

### C. Local Rule 83.1(G).

Moreover, the practice of ghost-writing pleadings or motions for otherwise *pro se* litigants allows attorneys to circumvent Local Rule 83.1(G) which provides that once an attorney has entered an appearance in a civil or criminal action, withdrawal is permitted only by order of the court, and after reasonable notice to the party represented. The purpose of this rule is to provide for communication between the litigants and the court, as well as ensuring that the court is able to fairly and efficiently administer the litigation. *See Ohntrup v. Firearms Center, Inc.*, 802 F.2d 676 (3rd Cir.1986) (discussing a similar Local Rule for the Eastern District of Pennsylvania). While the Attorneys in these cases did not initially enter a formal appearance, they did contract with these plaintiffs to provide legal representation directly related to the litigation of these cases. The Attorneys drafted the plaintiffs' pleadings and, in at least some cases, they were compensat-

ed for the efforts. Had they signed the pleadings, as they should have done, they would not have been permitted to terminate their representation without the Court's permission and adequate notice to the plaintiffs. The Attorneys represented litigants in a federal action, and then terminated their representation, without ever formally appearing before the Court. If the Court permitted Lawyers to provide piecemeal representation to otherwise *pro se* litigants without entering an appearance, Local Rule 83.1(G) would be circumvented.

While this practice may be convenient for counsel, the cases at hand illustrate how this practice can disrupt the Court's efficient administration of justice. The Attorneys maintain that they contracted with the plaintiffs for a "limited engagement" to draft the complaints in these cases. Nevertheless, one of the plaintiffs informed the Deputy Clerk of the Court on several occasions that he continued to be represented in his civil action by the Attorneys. Upon contacting the Attorneys, the Deputy Clerk was informed that they were not representing the plaintiff. Hoping to eliminate the confusion, the Clerk requested that the Attorneys write a letter for the Court's file confirming that they are not representing the plaintiff. The Attorneys provided the letter requested by the Clerk, but nowhere in the letter did the Attorneys disclose that they had drafted the complaint filed in the plaintiff's case. In another case, the Attorneys initially contracted only to draft the complaint, but eventually entered a formal appearance and apparently intend to participate throughout the duration of the litigation. The Local Rule is intended to eliminate this confusion and ensure that the appropriate litigants and attorneys receive proper notice of all proceedings.

### III. Summary.

The Court **FINDS** that the practice of ghost-writing legal documents to be filed with the Court by litigants designated as proceeding *pro se* is inconsistent with the

---

4. "When appropriate, the court can make an additional inquiry in order to determine whether the sanctions should be imposed on such persons, firms, or parties either in addition to or, in

unusual circumstances, instead of the person actually making the presentation to the court." Fed.R.Civ.P. 11 advisory committee's notes.

procedural, ethical and substantive rules of this Court. While the Court believes that the Attorneys should have known that this practice was improper, there is no specific rule which deals with such ghost-writing. Therefore, the Court **FINDS** that there is insufficient evidence to find that the Attorneys knowingly and intentionally violated its Rules. In the absence of such intentional wrongdoing, the Court **FINDS** that disciplinary proceedings and contempt sanctions are unwarranted.

This Opinion and Order sets forth this Court's unqualified **FINDING** that the practices described herein are in violation of its Rules and will not be tolerated in this Court.

The Clerk is **REQUESTED** to send a copy of this Order to counsel for all parties and the attorneys.

It is so **ORDERED.**