**In re Richardo J. MUNGO a/k/a Richardo Mungo a/k/a Rick Mungo, Debtor.**

No. C/A 03–06648–W.

United States Bankruptcy Court, D. South Carolina.

Oct. 17, 2003.

Ralph C. McCullough, II, Columbia, SC, for Trustee.

**ORDER**

JOHN E. WAITES, Bankruptcy Judge.

This matter comes before the Court pursuant to the Court's Rule to Show Cause and Order to Appear (the "Rule") entered on September 23, 2003. The Rule required Richardo J. Mungo ("Debtor") and his counsel, Francis S. Santore, Jr., ("Santore") and George Hunter McMaster ("McMaster"), to appear and show cause why Debtor's pleading filed pro se should not be stricken, why pro hac vice admission should not be revoked, and why sanctions should not be ordered. Debtor and his counsel appeared and were heard at a hearing on September 23, 2003.

**FINDINGS OF FACT** [1]

1. Debtor filed a voluntary Chapter 7 bankruptcy petition on May 30, 2003, C/A No. 03–06648–W. Santore, a member of the Tennessee bar authorized to appear pro hac vice according to the Local Rules of this Court and the United States District Court for the District of South Carolina, and McMaster, serving as local counsel pursuant to the Local Rules, represent Debtor in his Chapter 7 bankruptcy case.

2. Upon motion by South Carolina Community Bank during the Chapter 7 case, certain real property was abandoned from Debtor's bankruptcy estate and relief from stay was granted on July 15, 2003. Both the abandonment of real property and relief from stay occurred without objection by Debtor.

3. On September 2, 2003, Debtor, acting pro se, filed a Motion to Convert the case from Chapter 7 to Chapter 11 ("Con-

---

1. The Court notes that to the extent any of the following Findings of Fact constitute Conclusions of Law, they are adopted as such, and to the extent any Conclusions of Law constitute Findings of Fact, they are also so adopted.

version Motion"). On September 3, 2003, Debtor, again acting pro se, filed a Notice of Motion and Motion for Reinstatement of Stay and Emergency Motion ("Reinstatement of Stay Motion"). The Reinstatement of Stay Motion alleged that a sale of Debtor's real property was scheduled for that day and requested the sale be stayed.

4. The caption of both the Conversion Motion and Reinstatement of Stay Motion contained Debtor's case number but listed the case name as Mungo Casket Company, Inc., a separate ongoing Chapter 7 case concerning Debtor's business and uniquely identified as C/A No. 03–6665–W, in which Santore and McMaster also represent Debtor's business. The apparent incorrect statement of case name in combination with the emergency nature of the Reinstatement of Stay Motion caused confusion and required administrators in the Clerk's office to contact Debtor and his counsel and spend a great deal of time and effort to determine the correct case and nature of relief requested.

5. McMaster drafted the Conversion Motion and Reinstatement of Stay Motion at Debtor's request in order to stay the foreclosure sale. At a hearing on September 23, 2003, McMaster advised the Court that Debtor's family had a long-standing relationship with his family and that Debtor desperately sought McMaster's last-minute assistance to stop the foreclosure sale. McMaster further stated that since he was not a specialist in bankruptcy practice, he consulted with other bankruptcy practitioners to determine what action could be taken to halt the foreclosure sale. Furthermore, McMaster also advised the Court that Santore was not involved in nor had any knowledge of the preparation and filing of the Debtor's pro se motions because he was out of his office and unavailable.

6. The Reinstatement of Stay Motion, which stated no grounds to support it, was denied by an Order entered on September 3, 2003. Debtor withdrew the Conversion Motion at the hearing on September 23, 2003.

## CONCLUSIONS OF LAW

The issues raised by this matter before the Court involve the extent to which an attorney must represent his/her client in matters before this Court and the anonymous writing of pleadings by attorneys. These issues have ethical considerations which are not to be taken lightly and this Order serves as notice to the bar of the findings and conclusions herein. In order to specifically address these issues, the Court examined this Court's Local Rules, the South Carolina Rules of Professional Conduct, the Federal Rules of Civil Procedure, and federal case law.

### I. Extent of representation of debtor in matters before the Court

 This Court's *Local Rule 9010–1(d)* provides:

> Except as may be provided in an attorney's written agreement with the client concerning appeals and adversary proceedings, any attorney who files documents on or behalf of a debtor or party in interest shall remain the responsible attorney of record for all purposes including the representation of the client at all hearings and in all matters that arise in conjunction with the case. Upon motion which details the reasons for the request for withdrawal and which details the portion of any retainer which has been earned, and after notice to the debtor, all creditors and parties in interest and a hearing, the court may permit an attorney to withdraw as attorney of record.

More succinctly, Local Rule 9010–1(d) provides that an attorney who files documents or appears on behalf of a debtor or party in interest shall remain the responsible attorney of record for all purposes, including the representation of the client in all hearings and in all matters that arise in conjunction with the case. *Johnson v. Bank of Travelers Rest (In re Johnson)*, C/A No. 02–12545, Adv. Pro. No. 03–80212, slip op. (Bankr.D.S.C. May 8, 2003). Application of this Local Rule to counsel of record is quite strict; and thus, the requirements of the Local Rule are not subject to waiver by a debtor absent approval of the Court, *Id.* at *2.

■ The adoption of *Local Rule 9010–1(d)* was an important step in maintaining the integrity and efficient handling of matters before the Court. Among other benefits, *Local Rule 9010–1(d)* allows the Court and other interested parties to determine and rely on the appearance of counsel in order to encourage the efficient administration of cases, to include coordinating the service of pleadings and objections and the noticing of hearings. *Local Rule 9010–1(d)* also provides a means of placing other members of the bar on notice that a particular party to the bankruptcy case has legal representation; thus, all discussions concerning the case can be directed toward that party's counsel. Furthermore, *Local Rule 9010–1(d)* allows the Court to determine the source of a party's legal instruction in order to hold the counsel providing assistance accountable to the applicable rules of court, other substantive requirements, and standards of conduct.

The positive effects provided by *Local Rule 9010–1(d)* are frustrated whenever an attorney either fails to completely satisfy its provisions or anonymously represents a party to a case. Clients who proceed through a case without an attorney to shepherd them through the complexities of the bankruptcy process tax the resources of the Court since these pro se individuals often require more time consuming handling by the Clerk's Office and the Court in order to insure they are provided adequate due process. Additionally, pro se litigants are more likely to make errors which require the Clerk and Court to expend resources to correct. Finally, when litigants are properly represented they are more likely to obtain the full benefits of the bankruptcy laws and follow necessary procedures.

■ In this case, the facts clearly demonstrate that McMaster violated this Local Rule. McMaster serves as an attorney of record in Mungo's personal Chapter 7 bankruptcy case. As local counsel, McMaster is subject to the provisions of *Local Rule 9010–1(d)*. In fact, as local counsel he is obligated to sign pleadings in Mungo's case, know and observe this Court's Local Rules, attend hearings, and be prepared to actively participate in those hearings. *See U.S. District Court Local Civil Rules 83.I.04, 83.I.06*. When McMaster failed to file and sign Mungo's Conversion Motion and Reinstatement of Stay Motion and failed to represent Mungo at the ensuing hearing, McMaster failed to fulfill his duty to "remain the responsible attorney of record for all purposes including representation of the client at all hearings and in all matters that arise in conjunction with the case." *Local Rule 9010–1(d)*. If McMaster had any reservations about representing Mungo in regards to the Conversion Motion and Reinstatement of Stay Motion, then McMaster should have formally filed a Motion to Withdraw as Counsel or otherwise advise the Court. Pursuant to *Local Rule 9010–1(d)*, McMaster was under the duty to represent Mungo in his efforts to convert the case and effect a stay as well as in all proceedings

arising from the Conversion Motion and the Reinstatement Motion.

Furthermore, McMaster had notice of the duties placed upon him by *Local Rule 9010–1(d)*, including the duty to advise the Court of matters affecting his continued representation and compliance with the Rule. The act of anonymously drafting pleadings for which a client appears and signs pro se is often termed "ghost-writing." For the reasons set forth hereinafter, the Court recognizes the act of ghost-writing as a violation of *Local Rule 9010–1(d)* and in contravention of the policies and procedures set forth in the South Carolina Rules of Professional Conduct and the Federal Rules of Civil Procedure.

## II. Ghost–Writing

The act of ghost-writing is not a new phenomenon—it is a problem that has occurred in other courts and has been deemed an unethical practice. Inasmuch as this Court and courts within this District have yet to specifically and directly address the issue, this Court finds it necessary to issue this Order to provide notice to the bar that anonymous drafting or ghost-writing of pleadings for pro se individuals without signing such pleadings is prohibited and may result in sanctions and possibly suspension or disbarment from practice before this Court.

In light of the attendant circumstances involved in this case and the limited precedent within the District of South Carolina concerning the professional, ethical, and the substantive implications of an attorney's anonymous drafting of pleadings that his client represents as pro se filings, the Court will examine and discuss the actions of McMaster in this case in order to provide guidance on why such a practice is prohibited.

### A. Definition of ghost-writing

Ghost-writing is best described as when a member of the bar represents a pro se litigant informally or otherwise, and prepares pleadings, motions, or briefs for the pro se litigant which the assisting lawyer does not sign, and thus escapes the professional, ethical, and substantive obligations imposed on members of the bar. *See Barnett v. LeMaster,* No. 00–2455, 2001 WL 433413 at *3 (10th Cir.2001); *Ellis v. Maine,* 448 F.2d 1325, 1328 (1st Cir.1971); *Laremont–Lopez v. Southeastern Tidewater Opportunity Ctr.,* 968 F.Supp. 1075, 1078 (E.D.Va.1997); *Wesley v. Don Stein Buick,* 987 F.Supp. 884, 885 (D.Kan.1997); *U.S. v. Eleven Vehicles,* 966 F.Supp. 361, 367 (E.D.Pa.1997). The court in *Ricotta v. Cal.,* 4 F.Supp.2d. 961, 987 (S.D.Cal.1998) went further and answered the threshold issue of what constitutes ghost-writing by analyzing *Ellis, Johnson v. Board of Comm'rs of Fremont County,* 868 F.Supp. 1226 (D.Colo.1994), and *Laremont–Lopez:*

> [I]n *Ellis,* the Court stated that its concern was directed at petitions that were "manifestly written" by someone with some legal knowledge and briefs that were prepared in "any substantial way" by a member of the bar. In *Johnson,* the ghost-writing attorney drafted the documents entirely. The Court asserted that it was concerned with attorneys who "authored pleadings and necessarily guided the course of litigation with an unseen hand." Finally, in *Laremont,* the allegations were that the Plaintiff actually paid attorneys who secretly drafted the complaints, tried to resolve the dispute, and paid the court filing fees out of their law firm's account. In light of these opinions, in addition to this Court's basic common sense, it is the Court's opinion that a licensed attorney does not violate procedural, substantive, and professional rules of a federal court

by lending some assistance to friends, family members and others with whom he or she may want to share specialized knowledge. Otherwise, virtually every attorney licensed to practice law would be eligible for contempt proceedings. Attorneys cross the line, however, when they gather and anonymously present legal arguments, with the actual and constructive knowledge that the work will be presented in some similar form in a motion before the Court. With such participation the attorney guides the course of litigation while standing in the shadows of the Courthouse door.

*Ricotta v. Cal.*, 4 F.Supp.2d. at 987 (internal citations omitted). Much like the court in *Ricotta*, this Court recognizes that there are certain degrees of undisclosed attorney guidance for clients that need not be prohibited. However, in light of the bright line determination made in *Ricotta*, this Court defines ghost-writing as the act of an attorney anonymously drafting or guiding the drafting of a substantial portion of a pleading or various pleadings for a litigant with the actual and constructive knowledge that the work will be presented pro se in some similar form to a court.

### B. Factors that lead the Court to prohibit ghost-writing and resulting remedies

 Policy issues lead this Court to prohibit the ghost-writing of pleadings and motions for litigants that appear pro se and to establish measures to discourage ghost-writing.

i. First and foremost, ghost-writing must be prohibited in this Court because it is a deliberate evasion of a bar member's obligations, pursuant to *Local Rule 9010–1(d)* and *Fed.R.Civ.P. Rule 11*. See *Barnett*, 2001 WL 433413 at *3; *Duran v. Carris*, 238 F.3d 1268, 1272 (10th Cir. 2001); *Ellis v. Maine*, 448 F.2d at 1328; *Ricotta v. Cal.*, 4 F.Supp.2d. at 987; *Lare-*

*mont–Lopez*, 968 F.Supp. at 1078–79; *Wesley*, 987 F.Supp. at 886. As previously discussed, this Court's *Local Rule 9010–1(d)* provides that an attorney who files documents or appears on behalf of a debtor or party in interest shall remain the responsible attorney of record for all purposes, including the representation of the client in all hearings and in all matters that arise in conjunction with the case.

Additionally, *Fed.R.Civ.P. 11* requires an attorney to sign all documents submitted to the court and to personally represent that there are grounds to support the assertions made in each filing in the course of that attorney's representation of a client. Ghost-writing frustrates the application of these rules by shielding the attorney who drafted pleadings for pro se litigants in a cloak of anonymity. An obvious result of the anonymity afforded ghost-writing attorneys is that they cannot be policed pursuant to the applicable ethical, professional, and substantive rules enforced by the Court and members of the bar since no other party to the existing litigation is aware of the ghost-writing attorney's existence. See *Barnett*, 2001 WL 433413 at *3; *Duran*, 238 F.3d at 1272; *Ellis*, 448 F.2d at 1328; *Laremont–Lopez*, 968 F.Supp. at 1078–79. The Court finds this result particularly disturbing; and thus, considers this factor a strong policy ground for prohibiting attorneys from ghost-writing pleadings and motions for pro se litigants. Therefore, to counter this danger, the Court will, in its discretion, require pro se litigants to disclose the identity of any attorneys who have ghost written pleadings and motions for them. Furthermore, upon finding that an attorney has ghost written pleadings for a pro se litigant, this Court will require that offending attorney to sign the pleading or motion so that the same ethical, professional, and substantive rules and standards

regulating other attorneys, who properly sign pleadings, are applicable to the ghost-writing attorney.

ii. Secondly, federal courts generally interpret pro se documents liberally and afford greater latitude as a matter of judicial discretion. Allowing a pro se litigant to receive such latitude in addition to assistance from an attorney would disadvantage the non-offending party. *See Barnett*, 2001 WL 433413 at *3; *Duran*, 238 F.3d at 1271–72; *Laremont–Lopez*, 968 F.Supp. at 1078; *Wesley*, 987 F.Supp. at 885–86; *U.S. v. Eleven Vehicles*, 966 F.Supp. at 367. Furthermore, such activities negatively taint the Court towards the appearance of well meaning pro se litigants who have no legal guidance at all and rely on the Court's discretionary patience in order to have a level litigating field. Ghost-writing attorneys and the pro se litigants who take an advantage in this manner should not be rewarded. Therefore, upon a finding of ghost-writing, the Court will not provide the wide latitude that is normally afforded to legitimate pro se litigants.

iii. Furthermore, this Court prohibits attorneys from ghost-writing pleadings and motions for litigants that appear pro se because such an act is a misrepresentation that violates an attorney's duty and professional responsibility to provide the utmost candor toward the Court. *See Barnett*, 2001 WL 433413 at *4 ("where [pro se litigant] entered a *pro se* appearance as well as filed and signed his appeal *pro se*, the attorney who drafted the brief misrepresented the nature of his or her assistance to [the pro se litigant]"); *Duran*, 238 F.3d at 1272 ("We determined that [the act of ghost-writing] as presented here constitutes a misrepresentation to this court by litigant and attorney"); *Ellis v. Maine*, 448 F.2d at 1328 (condemning the practice of attorneys ghost-writing pleadings for pro se litigants); *Ricotta*, 4

F.Supp.2d. at 987 ("Attorneys cross the line . . . when they gather and anonymously present legal arguments, with the actual or constructive knowledge that the work will be presented in some similar form in a motion before the Court . . . The Court believes that this assistance is more than informal advice to a friend or family and amounts to unprofessional conduct."); *Laremont–Lopez*, 968 F.Supp. at 1079 ("The Court FINDS that the practice of ghost-writing legal documents to be filed with the Court by litigants designated as proceeding pro se is inconsistent with procedural, ethical and substantive rules of this Court."); *Clarke v. U.S.*, 955 F.Supp. 593, 598 (E.D.Va.1997) ("Ghost-writing by an attorney of a 'pro se' plaintiff's pleadings has been condemned as[ ] unethical . . . Thus, if in fact an attorney has ghost written plaintiff's pleadings in the instant case, this opinion serves as a warning to that attorney that this action may be both unethical and contemptuous."); *U.S. v. Eleven Vehicles*, 966 F.Supp. at 367 ("participating in a ghost-writing arrangement such as this, where a lawyer drafts the pleadings and the party signs them, implicates the lawyer's duty of candor to the Court. Clearly the party's representation to the Court that he is pro se is not true. A lawyer should not silently acquiesce to such representation.") (internal citation omitted).

iv. Additionally, the South Carolina Rules of Professional Conduct do not condone ghost-writing. *South Carolina Rule of Professional Conduct Rule 3.3(a)(2)* ("SCRPC Rule 3.3(a)(2)") states "A lawyer shall not knowingly: . . . [f]ail to disclose a material fact to a tribunal when disclosure is necessary to avoid assisting a criminal or fraudulent act by the client." *South Carolina Rule of Professional Conduct Rule 8.4(d)* ("SCRPC Rule 8.4(d)") states "It is professional misconduct for a lawyer to: . . . [e]ngage in conduct involv-

ing dishonesty, fraud, deceit or misrepresentations." The act of ghost-writing violates *SCRPC Rule 3.3(a)(2)* and *SCRPC Rule 8.4(d)* because assisting a litigant to appear pro se when in truth an attorney is authoring pleadings and necessarily managing the course of litigation while cloaked in anonymity is plainly deceitful, dishonest, and far below the level of disclosure and candor this Court expects from members of the bar. *See Ricotta,* 4 F.Supp.2d. at 986 (quoting *Johnson,* 868 F.Supp. at 1231). For the sake of enforcing and maintaining the ethical and professional responsibilities governing attorneys within the District of South Carolina, in the future, the Court will, in its discretion, consider sanctions which may include suspension or disbarment of a ghost-writing attorney from practice before this Court.

v. Finally, the effect of ghost-writing on the operation of this Court cannot be overemphasized. This Court has a high volume of cases—many, if not all, involve time-sensitive matters that require the Court to hear matters and issue rulings in an expeditious manner. The Court has established procedures to efficiently address emergency motions. An integral part of these procedures includes the need for the filing party to correctly serve the motion and notice of the hearing in an expedited fashion and be immediately prepared to present evidence justifying the relief sought. Pro se litigants frequently have difficulty meeting these requirements, particularly in matters concerning case administration and scheduling, thus taxing the Court's system and forcing the Court to expend more time and effort to handle the matter. The Court must be able to look to attorneys of record to perform these tasks for the benefit of their clients and case administration.

### C. Analysis and Conclusion of the case at bar

In this case, McMaster admitted that he drafted or authored the Conversion Motion and Reinstatement of Stay Motion on behalf of his client, Mungo, who then filed the documents pro se. McMaster did not sign the pleadings he drafted for Mungo; therefore, McMaster drafted the pleadings anonymously. McMaster knew that Mungo would file the pleadings he drafted in this Court. The filings caused confusion and a waste of judicial resources, not only in their misguided aim to halt the foreclosure sale and their failure to set forth substantively adequate grounds, but in seeking action by the Court on an emergency basis. The filings required the Chapter 7 Trustee to respond, causing cost and expense to the estate. McMaster's ghost-writing of the Motions and failure to meet his responsibilities as counsel of record were improper.

This Court has struggled with the appropriate sanction to impose in this matter.[2] In light of the limited authority addressing the matter of ghost-writing within the District of South Carolina, this Court finds that setting forth a clear prohibition for future cases and publicly admonishing McMaster is the best and fairest sanction. Hereafter, the bar at large is considered aware of the requirements of *Local Rule 9010–1(d)* and this Court's stand on ghost-writing and is also on notice that in the future, such violations may be addressed by the imposition of possible sanctions, suspension, or disbarment from practice before this Court. It is therefore

**ORDERED** that George Hunter McMaster, Esq., is hereby publicly admon-

---

2. The Court notes that a pro se litigant may also be subject to sanctions, including the sua sponte dismissal of the pleading, for presenting a ghost-written pleading as a pro se pleading. In this case, the Motions were dismissed or withdrawn.

ished for violating *Local Rule 9010–1(d)* and for the unethical act of ghost-writing pleadings for a client, for aiding his client with misrepresenting to the Court that such client was acting pro se, and for the resulting waste of judicial resources and resources of the estate; and it is further

**ORDERED** that the employment of McMaster as local counsel in the matter before the Court is hereby vacated; and it is further

**ORDERED** that in as much as Santore is also responsible for representing Debtor on all actions taken in this case and such actions were improper, the Order granting Santore's application for pro hac vice admission in this case is hereby vacated; and it is further

**ORDERED** that Debtor shall act within the next ten (10) days from the entry of this Order to obtain substitute counsel or will be considered acting pro se in this case.

**AND IT IS SO ORDERED.**