**Captain Sheriff SAUDI, Plaintiff,**

v.

**NORTHROP GRUMMAN CORPORATION, Newport News Shipbuilding, Inc., Keppel Group Corporation, d/b/a Keppel Offshore & Marine, Ltd., d/b/a Keppel Shipyard (PTE), Ltd., Defendants.**

**No. CIV. 2:03CV299.**

United States District Court, E.D. Virginia, Norfolk Division.

April 6, 2004.

---

Captain Sheriff Saudi, Bellaire, TX, pro se.

Roy Grant Decker, Jr., Esquire, William Lewis Stauffer, Jr., Esquire, Bracewell & Patterson LLP, Reston, VA, Edward James Powers, Esquire, John Morgan Ryan, Esquire, Vandeventer Black LLP, Norfolk, VA, for Defendants.

## ORDER

MORGAN, Senior District Judge.

This matter is before the Court on Defendant Keppel Group Corporation's ("Keppel") Motion to Dismiss for lack of personal jurisdiction (Document No. 13), and Plaintiff Captain Sheriff Saudi's ("Plaintiff") Motion for Sanctions (Document No. 34). For the reasons discussed in this Order, the Court **GRANTS** Keppel's Motion to Dismiss and **DENIES** Plaintiff's Motion for Sanctions. The Court further **ORDERS** that the Plaintiff will no longer be accorded deference as a *pro se* litigant.

### PROCEDURAL HISTORY

The Plaintiff filed his original Complaint on May 17, 2002 in the United States District Court for the District of Columbia. (Document No. 1). The case was transferred from the District of Columbia to this Court on March 19, 2003 pursuant to 28 U.S.C. § 1406(a), after the transferring court found that venue was improper as to both Defendants. (Document No. 10). On June 26,

2003, Keppel filed a Motion to Dismiss the Plaintiff's Complaint, claiming that this Court did not have personal jurisdiction over Keppel, pursuant to FED. R. CIV. P. 12(b)(2). On August 27, 2003, the Court heard argument on Keppel's Motion to Dismiss, and ordered that the Plaintiff be allowed to serve five (5) jurisdictional interrogatories on Keppel. *See* Document No. 23, Order of August 28, 2003. The interrogatories were limited to Keppel's contacts with the United States generally, and the Eastern District of Virginia. *Id.* The Plaintiff served the Defendant with interrogatories on or about September 16, 2003. *See* Document No. 27, Notice of Filing Interrogs. The Court granted Keppel two extensions of time to answer the Plaintiff's interrogatories. *See* Documents No. 31–32. In a letter to the parties dated January 29, 2004, the Court granted Keppel a third extension of time to serve answers to Plaintiff's interrogatories by February 12, 2004, and scheduled a hearing to resolve Keppel's Motion to Dismiss on March 4, 2004. On or about February 12, 2004, Keppel answered the jurisdictional interrogatories. *See* Document No. 34, Pl.'s Mot. for Sanctions, Ex. A. On March 1, 2004, the Plaintiff filed a Motion for Sanctions, claiming that Keppel failed to adequately respond to the jurisdictional interrogatories. *See* Document No. 34. The Court held the hearing scheduled for March 4, 2004, and ordered that Keppel respond to Plaintiff's Motion for Sanctions. The Court scheduled a final hearing for March 29, 2004 to resolve Keppel's Motion to Dismiss and Plaintiff's Motion for Sanctions. On March 29, 2004, the Court held a hearing and ruled from the bench on the pending motions.

### FACTUAL BACKGROUND [1]

Plaintiff Saudi was a resident of the State of Texas as of May 17, 1999, the date of his injury, and maintains his residency in Texas. *See* Compl. at ¶ 1. Defendant Keppel is a corporation organized and existing under the laws of Singapore with its principal place of business in Singapore. Document No. 17, Yun Kien Aff., at ¶ 2.

1. The facts of this ruling are stated in the light most favorable to the Plaintiff, and are not factual findings for any purpose other than the

The Plaintiff was injured when he fell fifty feet into the Gulf of Mexico when a crane on the S/T Marine Atlantic ("the vessel") failed. *See* Compl. at ¶ 8. The vessel was manufactured by Newport News Shipbuilding in 1979, and included a port side hose handling crane. *Id.* at ¶¶ 2, 4. In 1994, Keppel refurbished, remanufactured, and rebuilt the vessel. *Id.* at ¶ 7. The vessel was later reactivated by its owner and placed into the stream of commerce. *Id.* On May 17, 1999, the port side handling crane on the vessel failed while the Plaintiff was being lifted in a basket off of the vessel. *Id.* at ¶ 8. The jib on the port side of the vessel collapsed, dropping on top of the Plaintiff in the Gulf of Mexico. *Id.* at ¶ 9. The Plaintiff alleges multiple claims against Keppel: (1) negligence for breaching a duty of care in the repair and remanufacturing of the vessel (Compl. at 8, ¶ 12); (2) strict products liability (Compl. at 9, ¶ 3); and (3) breach of implied warranty of merchantability (Compl. at § VI).

In response to Keppel's Motion to Dismiss, the Court allowed the Plaintiff to serve jurisdictional interrogatories upon Keppel to determine the extent of Keppel's contacts with the United States and the Eastern District of Virginia. *See* Document No. 23. The Plaintiff served Keppel with five (5) interrogatories, but the Court sustained objections to three (3) of the interrogatories, leaving Keppel to respond to Interrogatories No. 2 and No. 5. *See* Document No. 30. Interrogatory No. 2 stated:

> Please list and describe by content, date, amount and description all document(s), billing(s), and payment(s), sent, made or received by or between Keppel Shipyard and Marine Atlantic, Ltd., Marine Transport Lines, Marine Transport Corporation, Acomarit Maritimes, S.A., V Ships Switzerland, Valmet Appleton, Appleton Machine, American Automar, Robert Hamshaw, Greg Doyle, Tom Garrett, and/or Richard Farman from January 1, 1994 to the present date.

Court's decision upon the motions which are the subject of this Order.

Document No. 27, Notice of Filing Interrogs., Interrog. No. 2. Keppel first responded to this interrogatory by stating, "There were no documents, billings or payments exchanged between KOM/KFEI and entities listed herein above from January 1, 1994 to present date." Document No. 34, Ex. A1. Keppel later changed its answer to Interrogatory No. 2, and stated: "We have not been able to locate any documents exchanged between Keppel Tuas and its predecessor Keppel Shipyard (Pte) Ltd ('KS') and those entities located in the United States as listed hereinabove." Document No. 34, Ex. A2. Interrogatory No. 5 stated:

Please list and describe all joint ventures, partnerships, or associations which Keppel Shipyards entered into with any United States persons, corporations, entities, or third parties having such a relationship with a United States person(s) or entity(ies) from January 1, 1994 to the present date.

Document No. 27, Notice of Filing Interrogs., Interrog. No. 5. Keppel answered this interrogatory "None" in both sets of Answers to Interrogatories. *See* Document No. 34, Ex. A1, A2. However, Keppel later admitted in its Brief in Opposition to Plaintiff's Motion for Sanctions that it does "own[ ] a shipyard in Brownsville, Texas which is a subsidiary and engages in maritime construction and repair work for businesses in the Gulf of Mexico." *See* Document No. 38, Br. in Opposition to Pl.'s Mot. for Sanctions ("Sanctions Opposition Brief"), at 3, n. 1.

### DISCUSSION

#### I. PLAINTIFF'S PRO SE STATUS

The first issue before the Court is Plaintiff's *pro se* status. The Plaintiff is not formally represented by counsel before this Court. However, the Plaintiff has admitted to receiving advice from two attorneys in Houston, Texas in deciding whether to bring this suit in Washington, D.C. or Virginia. *See* Case No. CV02–972, District Ct. of D.C., Tr. of Motion Hr'g, Nov. 14, 2002, at 19–20. Moreover, the Plaintiff has brought cases in Houston, the Fifth Circuit, the Supreme Court of Texas, Wisconsin, and New York, that all relate to the facts and circumstances

underlying the case at bar. *See* Document No. 37, Tr. of Hr'g March 4, 2004, at 15. The Plaintiff has retained attorneys in some of these actions and always familiarizes himself with the pleadings in those cases. *Id.* at 15–16. In the case at bar, the Plaintiff admits that he receives help from the legal support staff in the office of his counsel in another case, and has had general discussions regarding the subject matter of the case with counsel. *Id.* at 16. This includes styling his pleadings and correcting his phraseology. *Id.*

■ *Pro se* litigants are entitled to some deference from the courts. *See Ballard v. Carlson*, 882 F.2d 93 (4th Cir.1989) (citing *Haines v. Kerner*, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972)). However, a party is either *pro se* and accorded deference, or not *pro se* and accorded no deference. *See Laremont–Lopez v. Southeastern Tidewater Opportunity Project*, 968 F.Supp. 1075, 1078 (E.D.Va.1997). There cannot be a middle ground, because the Court cannot monitor the value of aid a party is receiving from counsel and counsel's employees and grant deference accordingly.

■ In light of the evidence before the Court, the Plaintiff will no longer be given deference by the Court as a *pro se* litigant. The Plaintiff has received some assistance from counsel and counsel's employees in this case and in related cases before other courts. The Plaintiff consulted with counsel prior to bringing the case at bar in Washington, D.C., which was later transferred to the Eastern District of Virginia. The Plaintiff admits to receiving help from counsel's support staff in drafting his pleadings. Based on this evidence, the Court will no longer accord the Plaintiff deference based on his *pro se* status. The Court **FINDS** that the Plaintiff has received certain of the benefits accruing to a party represented by counsel. Whether the Plaintiff retains counsel in this matter or continues to represent himself, the Court **ORDERS** that he shall be denied *pro se* status.

#### II. MOTION FOR SANCTIONS

The next issue before the Court is Plaintiff's Motion for Sanctions for Keppel's fail-

ure to answer the jurisdictional interrogatories. (Document No. 34). The Court did not consider the Plaintiff's Reply to Keppel's Brief in Opposition to Plaintiff's Motion for Sanctions (Document No. 40) when deciding this motion. The filing deadline for Plaintiff's reply was March 22, 2004. The Plaintiff filed his reply on March 29, 2004 at 2:03 p.m., less than one half-hour prior to the hearing on the Motion for Sanctions and Motion to Dismiss. *See* Document No. 40. The Plaintiff's filing of his reply at such a late date exceeded the filing deadline of the Court, and did not give the Court or opposing counsel a chance to review the reply in preparation for the hearing. Accordingly, the Court **FINDS** that Plaintiff's reply was not timely filed and will not be considered.

The Plaintiff first argues that Keppel's answers to the interrogatories "grossly violate Rule 33 of the Federal Rules of Civil Procedure which require[s] that the interrogatories be sworn to personal knowledge by the person or entity making the answers." Rule 33 provides that interrogatories shall be answered "in writing under oath." FED. R. CIV. P. 33(b)(1). When the party answering the interrogatories is a private corporation, an officer or agent ·of the corporation may provide the answers for the corporation. FED. R. CIV. P. 33(a). Keppel has complied with the requirements of Rule 33. In this case, the answers were given by Jeffery Shiu Chow ("Chow"), the General Manager (Legal) and "duly authorized representative of Keppel Offshore & Marine Ltd." *See* Mot. for Sanctions, Ex. A1, A2. In both sets of Answers to Interrogatories, Chow signed the answers and represented that the "answers contained in the Interrogatories propounded by plaintiff, Captain Sheriff Saudi [were] true and correct to the best of [his] knowledge and belief." *Id.* Plaintiff's objection on this issue has no merit.

The Plaintiff's larger objection to Keppel's answers to interrogatories is that they were "made in gross bad faith." *See* Mot. for Sanctions at ¶ 9. In support of his argument, the Plaintiff provided the Court with copies of documents and correspondence exchanged between Keppel and Marine Atlantic and Marine Transport Line during 1994–95. *See*

*id.,* Ex. C–I. At the hearing on March 29, 2004, the Plaintiff also questioned the truthfulness of Keppel's answers to interrogatories based on Keppel's recent admission through counsel that it owns a subsidiary that operates a shipyard in Brownsville, Texas. *See* Tr. of Motions Hr'g on March 29, 2004, at 7–8.

■ The Plaintiff's Motion for Sanctions fails for two reasons. First, the Plaintiff failed to comply with Rule 37 of the Federal Rules of Civil Procedure. Rule 37 allows the discovering party to move for an order compelling an answer to interrogatories, but that motion "must include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make the discovery in an effort to secure the information or material without court action." FED. R. CIV. P. 37(a)(2)(B). In the case at bar, the Plaintiff did not first file a motion to compel answers to his interrogatories. Rather, the Plaintiff filed the Motion for Sanctions once he received what he believed inadequate answers to the interrogatories. Moreover, the Plaintiff did not in good faith, confer or attempt to confer with Keppel to secure the information he sought prior to filing the Motion for Sanctions. *See id.* Thus, Plaintiff's Motion for Sanctions must be denied.

The Plaintiff's Motion for Sanctions must be denied for a second reason. There is no evidence that Keppel did not comply with the Federal Rules of Civil Procedure which govern interrogatories. The Plaintiff's introduction of documents from 1994–95 does not make Keppel's answer to Interrogatory No. 2 purposely misleading or false. Keppel's representative, Chow, stated that Keppel was unable to find records matching the Plaintiff's request because the records were nearly ten (10) years old and there are no government or internal company regulations which require the retention of dated records. *See* Chow Aff. at ¶¶ 3–4. Chow stated that project files are usually discarded after the project ends and the warranties expire. *Id.* at ¶ 4. Thus, the documents and correspondence between Keppel and Marine Atlantic and Marine Transport Line do not support a

finding that Keppel falsely answered Interrogatory No. 2.

Nor is there any evidence that Keppel falsely answered Interrogatory No. 5. Interrogatory No. 5 is awkwardly-drafted and could lend itself to multiple interpretations. Keppel's admission, through counsel, that it owns a subsidiary that operates a shipyard in Brownsville, Texas, is not contrary to Keppel's answer to Interrogatory No. 5. Interrogatory No. 5 could be interpreted only to identify "joint ventures, partnerships, or associations" Keppel entered into with United States entities. Assuming that Keppel read "joint ventures, partnerships, or associations" from a legal perspective, the interrogatory arguably did not cover Keppel's parent-subsidiary relationship with the Brownsville shipyard. The Court **FINDS** that Keppel adequately answered the interrogatories propounded by the Plaintiff and substantially complied with the rules governing interrogatories. Plaintiff's Motion for Sanctions is **DENIED**.

### III. MOTION TO DISMISS—LACK OF PERSONAL JURISDICTION

■ The final issue before the Court is Keppel's Motion to Dismiss for lack of personal jurisdiction, pursuant to FED. R. CIV. P. 12(b)(2). *See* Document No. 13. When personal jurisdiction is challenged in a motion to dismiss pursuant to Rule 12(b)(2), the plaintiff bears the burden of proving jurisdictional facts by a preponderance of the evidence. *Combs v. Bakker,* 886 F.2d 673, 676 (4th Cir.1989); *Dunham v. Hotelera Canco S.A. de C.V.,* 933 F.Supp. 543, 551 (E.D.Va.1996) (citing *Mylan Labs., Inc. v. Akzo, N.V.* 2 F.3d 56 (4th Cir.1993)). The Plaintiff alleges that the Court has jurisdiction pursuant to Rule 4(k)(2) (*see* Compl. at ¶ 5), which requires the Plaintiff to show: (1) the claim "arises under federal law;" (2) the defendant is "not subject to the jurisdiction of the courts of general jurisdiction of any state;" and (3) the court's exercise of jurisdiction would be "consistent with the Constitution and the laws of the United States." FED. R. CIV. P. 4(k)(2); *see also Base Metal Trading, Ltd. v. OJSC Novokuznetsky Aluminum Factory,* 283 F.3d 208, 215 (4th Cir.2002);

*United States v. Swiss Am. Bank, Ltd.,* 191 F.3d 30, 38 (1st Cir.1999).

In the case at bar, the Plaintiff's claim arises under federal law, thus satisfying the first requirement. Federal courts have consistently found maritime law to be federal law. *See, e.g., Yamaha Motor Corp., U.S.A. v. Calhoun,* 516 U.S. 199, 211, n. 8, 116 S.Ct. 619, 133 L.Ed.2d 578 (1996); *Wells v. Liddy,* 186 F.3d 505, 524–25 (4th Cir.1999) (referring to "federal maritime law"); *World Tanker Carriers Corp. v. M/V Ya Mawlaya,* 99 F.3d 717, 723 (5th Cir.1996) (finding that cases of admiralty arise under federal law for purposes of determining Rule 4(k)(2) jurisdiction).

The Plaintiff has not satisfied the second requirement for jurisdiction pursuant to Rule 4(k)(2)—i.e., Keppel is not subject to the jurisdiction of the courts of general jurisdiction of any state. In his Complaint, the Plaintiff alleges that Keppel maintains an office for service in New York, New York. Compl. at ¶ 4. The Plaintiff has submitted correspondence and invoices from Keppel to Marine Transport Lines of Weehawken, New Jersey, and argued that Keppel was in a joint venture with Marine Transport Lines. *See* Mot. for Sanctions, Ex. C, H; *see also* Tr. of Motions Hr'g on March 29, 2004, at 6–7. At the hearing on March 29, 2004, the Plaintiff focused on Keppel's wholly-owned subsidiary in Brownsville, Texas as another contact Keppel maintains with the United States which further supports finding jurisdiction. *See* Tr. of Motions Hr'g on March 29, 2004, at 7–8.

■ Ironically, Plaintiff's focus on Keppel's contacts with the United States for jurisdictional purposes actually undermines his assertion of Rule 4(k)(2) jurisdiction. The Plaintiff bears the burden of proving that Keppel is not subject to the general jurisdiction of any state by a preponderance of the evidence. The Plaintiff has failed to meet this standard. Not only has the Plaintiff failed to show that Keppel is not subject to the general jurisdiction of any state, he has provided some evidence to the contrary. Keppel's prior and ongoing contacts in New Jersey and Texas suggest that Keppel *might* be subject to the general jurisdiction of the

courts of those states. The Court **FINDS** that the Plaintiff has failed to satisfy the second element required for jurisdiction under Rule 4(k)(2). Accordingly, Keppel's Motion to Dismiss for lack of personal jurisdiction is **GRANTED**.

### IV. CONCLUSION

Based on the Plaintiff's admissions that he has received legal advice from legal professionals during the course of this case and other related cases, the Court will no longer accord the Plaintiff deference based on his *pro se* status. It is **ORDERED** that the Plaintiff will be treated in the same manner as a party represented by counsel, regardless of whether he formally retains counsel in this matter or continues to represent himself.

The Plaintiff's Motion for Sanctions is **DENIED** because of Plaintiff's failure to comply with Rule 37 and Keppel's substantial compliance with the rules governing interrogatories. In making this ruling, the Court did not consider the Plaintiff's reply filed one half-hour prior to the scheduled hearing after finding that the reply was untimely.

The Court **GRANTS** Keppel's Motion to Dismiss for lack of personal jurisdiction, based on the Plaintiff's failure to show that Keppel is not subject to the general jurisdiction of any state. The Court **ORDERS** that Keppel is **DISMISSED** from this case. The Plaintiff is advised that Keppel's dismissal does not end the case because Newport News Shipbuilding and Northrop Grumman remain as defendants.

The Clerk is **REQUESTED** to mail a copy of this Order to all counsel of record. It is so **ORDERED**.

