*Attorney Grievance Commission of Maryland v. Melinda Maldonado*, Misc. Docket AG No. 11, September Term, 2017.  Opinion by Getty, J.

**ATTORNEY DISCIPLINE — SANCTIONS—DISBARMENT**

The Court of Appeals disbarred an attorney who called her client's doctor, held herself out as a medical doctor, and sought the alteration of her client's medical records.  When the attorney was unable to reach the doctor, the attorney continued to repeatedly call the doctor's office over the course of two days.  Further, while only barred in the District of Columbia, and without a *pro hac vice* sponsor, this attorney drafted and submitted various pleadings on behalf of her client in Maryland.  Finally, this attorney failed to obtain the trial transcripts required for her client's appeal in the Maryland Court of Special Appeals which resulted in the dismissal of her client's appeal.  These actions violated the Maryland Lawyers' Rules of Professional Conduct Rules: 1.1 (Competence); 4.1 (Truthfulness in Statements to Others); 5.5 (Unauthorized Practice of Law; Multijurisdictional Practice of Law); 8.1 (Bar Admission and Disciplinary Matters); and 8.4(a), (c), and (d) (Misconduct).

Circuit Court for Montgomery County
Case No. 433322-V
Argued: November 5, 2018

<u>IN THE COURT OF APPEALS</u>
<u>OF MARYLAND</u>

Misc. Docket AG No. 11

September Term, 2017

_____

ATTORNEY GRIEVANCE COMMISSION
OF MARYLAND

v.

MELINDA MALDONADO

_____

Barbera, C.J.
Greene,
McDonald,
Watts,
Hotten,
Getty,
Adkins, Sally D.,
(Senior Judge, Specially Assigned)

JJ.

_____

Opinion by Getty, J.

_____

Filed: March 6, 2019

Pursuant to Maryland Uniform Electronic Legal
Materials Act
(§§ 10-1601 et seq. of the State Government Article) this document is authentic.



Suzanne C. Johnson, Clerk

This attorney discipline case involves conduct of an out-of-state attorney during her representation of a Maryland resident in a toxic mold case. While representing her client, the attorney called her client's doctor, held herself out as a medical doctor, and sought the alteration of her client's medical records. When the attorney was unable to reach the doctor, the attorney repeatedly called the doctor's office over the course of two days and eventually made unprofessional comments about the doctor. Furthermore, while only barred in the District of Columbia, and without a *pro hac vice* sponsor, the attorney drafted and filed various pleadings on behalf of her client before Maryland courts. Finally, this attorney failed to obtain the trial transcripts required for her client's appeal in the Maryland Court of Special Appeals which resulted in the dismissal of that appeal. For the reasons explained below, we hold that this attorney's conduct merits disbarment.

## BACKGROUND

*Procedural Context*

On May 23, 2017, the Attorney Grievance Commission of Maryland, acting through Bar Counsel filed a Petition for Disciplinary or Remedial Action ("Petition") with the Court of Appeals alleging that Melinda Maldonado ("Ms. Maldonado") had violated the Maryland Lawyers' Rules of Professional Conduct ("MLRPC" or "Rules").[1] *See* Md. Rule

---

[1] Effective July 1, 2016, the MLRPC were renamed the Maryland Attorneys' Rules of Professional Conduct ("MARPC") and recodified in Title 19 of the Maryland Rules. Since Ms. Maldonado's misconduct occurred before and after the effective date of the recodification of the rules of professional conduct, she committed violations of the same rules of professional conduct under both the MLRPC and the MARPC. For simplicity, and because there is no substantive difference in the two codifications of the rules, we shall use the shorter designations of the MLRPC, *e.g.*, "Rule 1.1."

19-721. Although not admitted to practice in Maryland, Ms. Maldonado is subject to the disciplinary authority of Maryland pursuant to Rule 8.5(a)(2). The Petition alleged that Ms. Maldonado, during her representation of Gladys Duren ("Ms. Duren"), violated the following Rules: 1.1 (Competence); 4.1 (Truthfulness in Statements to Others); 4.4 (Respect for Rights of Third Persons); 5.5 (Unauthorized Practice of Law; Multijurisdictional Practice of Law); 8.1 (Bar Admission and Disciplinary Matters); and 8.4 (Misconduct).[2]

We designated Judge Deborah L. Dwyer ("the hearing judge") of the Circuit Court for Montgomery County by Order dated June 1, 2017 to conduct a hearing concerning the alleged violations and to provide findings of fact and recommended conclusions of law. *See* Md. Rule 19-722(a). The Clerk of the Circuit Court for Montgomery County ("Clerk") issued a summons to be served upon Ms. Maldonado, and on June 19, 2017, Bar Counsel emailed the petition, transmittal order, and summons to Ms. Maldonado and asked if she would consent to electronic service of process. Ms. Maldonado never responded.

Bar Counsel retained a process server to serve Ms. Maldonado. The process server was unsuccessful. As a result, the Clerk reissued the summons. Bar Counsel again emailed the petition, transmittal order, and summons on August 29, 2017 to Ms. Maldonado to request electronic service of process. Ms. Maldonado responded to Bar Counsel's request two days later and stated that she refused to accept electronic service of process. The process server also attempted service upon Ms. Maldonado again in person and failed.

---

[2] Bar Counsel later withdrew its Rule 8.1 violation allegation.

2

As a result of these interactions, Bar Counsel filed a Motion to Permit Service Upon Employee Designated by the Client Protection Fund of the Bar of Maryland pursuant to Maryland Rule 19-723(b). Bar Counsel was successful in serving the Executive Director of the Client Protection Fund of the Bar of Maryland.

Ms. Maldonado failed to file a timely answer, causing Bar Counsel to file a request for an order of default. Eventually, Ms. Maldonado retained Joseph A. Rillotta, Esquire and Margaret E. Matavich, Esquire who filed an opposition to the motion for order of default. In response, Bar Counsel consented to an extension of time for Ms. Maldonado to file an answer. Ms. Maldonado filed her answer on December 19, 2017, and Bar Counsel withdrew its motion.

The hearing judge issued a scheduling order setting forth deadlines to propound and to complete discovery. Bar Counsel promptly served discovery within the times set forth in the scheduling order. During this time, Ms. Maldonado sought to continue the discovery deadlines because she wished to proceed with new counsel. Bar Counsel opposed any continuation of this matter noting that Ms. Maldonado had already delayed the proceeding by evading service of process and failing to file a timely answer. Ms. Maldonado's motion was ultimately denied.

Mr. Rillotta and Ms. Matavich filed a Motion to Withdraw as Counsel pursuant to Maryland Rule 2-132(b). Mark G. Chalpin, Esquire entered his appearance on behalf of Ms. Maldonado. A few weeks later, Mr. Chalpin moved to withdraw his appearance due to "irreconcilable differences" with Ms. Maldonado. Ms. Maldonado, now proceeding *pro*

*se*, filed a Motion to Reconsider the Court's Order regarding the scheduling order. This motion was also denied.

On March 22, 2018, Bar Counsel filed a Motion for Sanctions based on Ms. Maldonado's failure to provide responses to Bar Counsel's Interrogatories, Requests for Production of Documents, and Requests for Admissions of Fact and Genuineness of Documents. Ms. Maldonado, now represented by William C. Brennan, Esquire, and Nicolas G. Madiou, Esquire, filed an Opposition to Petitioner's Motion for Sanctions. Ms. Maldonado stated that her failure to timely answer discovery was due to illness and issues stemming from changes in representation. The hearing judge held the motion *sub curia* to give the parties additional time to resolve their discovery dispute. On April 1, Ms. Maldonado provided Answers to Petitioner's Interrogatories; on April 10, she provided responses to Bar Counsel's Requests for Admissions of Fact and Genuineness of Law; and on April 20, Ms. Maldonado provided a partial response to Bar Counsel's Request for Production of Documents. As a result of her incomplete discovery responses, the hearing judge granted in part and denied in part Bar Counsel's Motion for Sanctions. The hearing judge precluded Ms. Maldonado from introducing any documents at trial which were not produced to Bar Counsel during discovery.

The evidentiary hearing took place over the course of two days on April 30 and May 1. At the evidentiary hearing, Bar Counsel and Ms. Maldonado presented evidence and several witnesses testified. The hearing judge submitted her findings of fact and conclusions of law by a written opinion to this Court. In her recommended conclusions of

law, the hearing judge found by clear and convincing evidence that Ms. Maldonado violated Rule 1.1, Rule 4.1, Rule 4.4, Rule 5.5, and Rule 8.4 (a), (c), and (d).

On August 7, 2018, Ms. Maldonado filed a motion in this Court titled as follows:

Respondent's Motion to Dismiss this Prolonged (Almost Three Years) Unethical and Immoral Defamation, Harassment & Interference with Underlying Toxic Mold Litigation by Petitioner, Attorney Grievance Commission (AGC) of Maryland. Alternatively, Respondent Motion for a Rehearing due to Egregious, Ineffective Assistance of Counsel by William C. Brennan & Nicholas Madiou & Due to Bias of Judge Debra Dwyer, Motions for a Change of Venue to Anne Arundel County, Judge Ronald Silkworth (due to County of Original Jurisdiction of Underlying Toxic Mold Case, Judge Silkworth's Familiarity w/Issue of Petitioner's, AGC's, Pattern & Practice of Defaming & Harassing Respondents while Aiding & Abetting Defense Law Firms Representing Real Estate Companies who File Grievances Against Opposing, Plaintiffs' Counsel (Respondents) to Disrupt Underlying Litigation all in the Name of Money.

("First Motion"). Two days later, Ms. Maldonado filed a second motion entitled:

Pending this Honorable Court's Review of Respondent's Definitive Submissions on 8-7-18: Motion to Dismiss, and, Alternatively, Request for a Rehearing due to Ineffective Assistance of Counsel & Biased/Legal Errors/Incorrect Findings of Facts Based on False Hearsay by Judge Dwyer; Motion for Change of Venue to Anne Arundel County Before Judge Ronald Silkworth Given Original Jurisdiction of Underlying Toxic Mold Case and Judge Silkworth's Experience with AGC-Respondent Hereby Inherently Submits this Motion to Extend Time to File Exceptions Document & Opposition to Motion for Sanctions & Will be Submitting in Turn Respondent's Motion for Sanctions Against the AGC/Bar Counsel & a Supplement to Motion to Dismiss.

("Second Motion"). As to her First Motion, this Court ordered action deferred pending oral argument. This Court granted her Second Motion to the extent that this Court permitted Ms. Maldonado to file any exceptions on or before September 5, 2018.

Bar Counsel took no exceptions and Ms. Maldonado filed numerous exceptions to the hearing judge's findings of fact and recommended conclusions of law. Ms. Maldonado

5

filed another motion to dismiss, entitled Respondent's Motion to Dismiss Part 2: ("Third Motion") on October 5, 2018 and filed an amended motion to dismiss, also entitled Respondent's Motion to Dismiss Part 2: ("Fourth Motion") two days later. We heard oral argument in this matter on November 5, 2018.

***Facts***

We begin with a summary of the hearing judge's factual findings. Ms. Maldonado has never been barred in Maryland. She was admitted to the Bar of the District of Columbia on November 14, 2003. Since then, she has maintained a law office in Arlington, Virginia and has focused on representing personal injury clients, specifically the practice of toxic mold litigation. This matter involves multiple instances of misconduct stemming from a toxic tort action filed in Maryland in the Circuit Court for Anne Arundel County.

*Ms. Maldonado's Unauthorized Practice of Law*

In the summer of 2013, David Haynes, Esquire, referred Ms. Duren, a Maryland resident, to Ms. Maldonado. Ms. Duren sought to sue her former landlord, Home Properties Resident Services, Inc. ("Home Properties"), because she alleged she became ill from toxic mold infestation in her rental townhome in Glen Burnie, Maryland. After meeting with Ms. Duren, Ms. Maldonado drafted a complaint. With Ms. Maldonado's assistance, Ms. Duren signed the complaint, indicated she was proceeding *pro se*, and filed the complaint with the Circuit Court for Anne Arundel County on April 24, 2014. The case was assigned case number 02-C-14-187157. Ms. Maldonado also filled out the case information report for Ms. Duren which Ms. Duren also signed and filed *pro se*. Ms.

Maldonado drafted an amended complaint that Ms. Duren signed and filed. The amended complaint continued to indicate that Ms. Duren was proceeding *pro se*.

Ms. Duren and Ms. Maldonado retained Christopher T. Nace, Esquire, and Paulson & Nace, PPLC to assist in the lawsuit. The retainer agreement between Ms. Maldonado, Ms. Duren, and Mr. Nace stated:

> This retainer agreement does not cover any appeals which may need to be filed on behalf of us as a consequence of an adverse event in my case. If Paulson & Nace, PPLC agrees to prosecute such an appeal on my behalf, then a new retainer agreement may be drawn up.

The retainer agreement stated further, "[i]f Paulson & Nace, PPLC comes to the conclusion that the case is non-meritorious or that it would be economically unsound to proceed, Paulson & Nace, PPLC reserves the right to seek its withdrawal."

Mr. Nace filed a motion for special admission *pro hac vice* on Ms. Maldonado's behalf. The motion was granted and the order granting the motion specifically stated, "the presence of Maryland counsel, Christopher T. Nace, Esquire, is not waived, and Maryland counsel must appear at all proceedings and co-sign all pleadings and motions."

James S. Liskow, Esquire, and Emily F. Belanger, Esquire, of DeCaro, Doran, Siciliano, Gallagher & DeBlasis, LLP represented Home Properties. A jury trial took place between July 28–30, 2015. At the end of Ms. Duren's case, Mr. Liskow moved for a directed verdict. The circuit court granted the motion and entered judgment in favor of Home Properties.

After the circuit court trial, Mr. Nace filed a notice of appeal with the circuit court pursuant to Maryland Rule 8-201(a) to preserve Ms. Duren's right of appeal. Shortly after

the notice of appeal, Mr. Nace informed Ms. Duren that he and his firm would not be entering into a new agreement for services related to the appeal and would be withdrawing as counsel of record. Ms. Duren consented.

Mr. Nace informed Ms. Maldonado about his withdrawal from the appeal through email and stated: "I don't believe that you can appear at the Court of Special Appeals, but I am not certain." Ms. Maldonado responded and stated, "Yes, agreed. Maryland [c]ounsel is required." However, after Mr. Nace withdrew, Ms. Maldonado continued to work on the case without a *pro hac vice* sponsor. Ms. Maldonado drafted pleadings and briefs for Ms. Duren to sign *pro se* and filed those pleadings in the Court of Special Appeals on behalf of Ms. Duren.

Eventually, Home Properties moved to dismiss the appeal pursuant to Maryland Rule 8-602 based on Ms. Duren's failure to obtain the trial transcript pursuant to Maryland Rule 8-413(a)(2). The Court of Special Appeals denied the motion without prejudice and ordered Ms. Duren to "take all steps necessary to cause all transcripts necessary for this Appeal to be filed in the Circuit Court for Anne Arundel County on or before February 1, 2016." The transcripts were never filed. Home Properties filed a second Motion to Dismiss which the Court of Special Appeals granted.

Ms. Maldonado drafted Appellant's Motion for Reconsideration of: Dismissal, Automatic Retrial, Extension of Time as Court Deems Reasonable & Waiver of Fees Given Severe Disability ("Motion for Reconsideration"). Ms. Maldonado typed Ms. Duren's electronic signature with Ms. Duren's consent and electronically filed the document with

8

Ms. Duren's email address. The Court of Special Appeals denied the Motion for Reconsideration and issued a Mandate.

Next, Ms. Maldonado drafted a Petition for Writ of Certiorari for Ms. Duren. Ms. Maldonado typed Ms. Duren's electronic signature and electronically filed the Petition for Writ of Certiorari using Ms. Duren's email address on April 27, 2016 with this Court. The Petition stated Ms. Duren was proceeding *pro se*. Ms. Maldonado also drafted the Certificate of Word Count and Compliance for Ms. Duren, typed Ms. Duren's electronic signature, and electronically filed the document using Ms. Duren's email address. Again, on June 14 and June 19, Ms. Maldonado drafted, typed Ms. Duren's electronic signature, and electronically filed two documents entitled Pro Se Petitioner's Reply-Part 1-to Respondents' Answer to Petition for Writ of Certiorari and Pro Se Petitioner's Reply-Part 2-to Respondent's Answer to Petition for Writ of Certiorari.

This Court denied the Petition for Writ of Certiorari as untimely filed. Ms. Maldonado then drafted Pro Se & Severely Disabled Petitioner's Motion for Reconsideration of Dismissal & Demand to Reinstate Case due to Early Not Late Filing, typed Ms. Duren's electronic signature, and electronically filed the document using Ms. Duren's email address. We denied the motion.

After the denial, Ms. Maldonado drafted a Petition for Writ of Certiorari ("Petition") to the Supreme Court of the United States. Again, the Petition stated Ms. Duren was proceeding *pro se* and Ms. Duren signed the Petition. Ms. Duren consented to the entry of appearances of Ms. Maldonado and Relinda Louisy, Esquire, as her attorneys before the

9

Supreme Court. Ultimately, the Supreme Court issued an Order denying the Petition for Writ of Certiorari.

*Ms. Maldonado's Communications with the Office of John Wiley, M.D.*

On February 9, 2015, Emily Belanger, Esquire, an attorney for Home Properties, issued a subpoena to Dr. John Wiley, a pulmonologist who treated Ms. Duren at Baltimore Washington Medical Center ("BWMC"). Ms. Maldonado called Dr. Wiley's office on July 21, 2015 at 10:13 a.m. Dr. Wiley's medical assistant, Keisha Lipscomb, answered. Ms. Maldonado identified herself to Ms. Lipscomb as "Doctor Maldonado" and asked to speak with Dr. Wiley. Ms. Maldonado further stated she had information that Ms. Duren was exposed to toxic mold and that she needed to tell Dr. Wiley about the toxic mold exposure so it could be added to Ms. Duren's records. Ms. Lipscomb stated that Dr. Wiley was unavailable to speak but that she would take a message for Dr. Wiley.

Ms. Maldonado called Dr. Wiley's office four more times that day, at 10:48 a.m., 10:55 a.m., 11:31 a.m., and 11:38 a.m. Ms. Maldonado was unable to reach Dr. Wiley and grew increasingly frustrated. Eventually, Ms. Maldonado revealed that she was Ms. Duren's attorney and that she needed documentation from Dr. Wiley immediately for a court filing.

At 11:01 a.m., Ms. Lipscomb made the following entry in Ms. Duren's patient log:

DR MELINDA MALDONADO called. . . . She would like to you [sic] call her, because she needs you to change your hospital note since you noted that the patient has allergies when in fact she was exposed to mold and needs to educate you on this.
[S]he would like you to call asap since she has to file paperwork within 15 min. [S]tates she is a physician and a lawyer?

10

Ms. Lipscomb testified she was confused by Ms. Maldonado's phone calls and was unsure how to answer them. Ms. Lipscomb's supervisor eventually instructed her not to speak with Ms. Maldonado. The calls were transferred to the office manager, Michelle Andrade. Ms. Lipscomb reviewed Ms. Duren's medical chart to determine if she could determine why Ms. Maldonado was repeatedly calling. Ms. Lipscomb found the subpoena from Ms. Belanger, whom she believed was Ms. Duren's attorney, in the file.

At 11:18 a.m., Dr. Elizabeth McIlmoyle made the following entry in Ms. Duren's patient log:

> This person called 4 x so far today, asking the above [as described in Ms. Lipscomb's note]. She spoke w/ [M]ichelle, [K]esha and [A]ndrea. Kesha called the [patient's] lawyer (who we have sent records to before w/signed release and whose info is in the chart) and spoke w/paralegal Joan-they stated they do not know who she is.
>
> We do not have releases to speak w/her or give any information.

Ms. Lipscomb googled Ms. Maldonado's name and discovered that she was not a physician, but instead was a toxic torts attorney. Dr. McIlmoyle wrote an addendum in the patient log:

> ADDENDUM: 1159AM
>
> As addendum to above, think lawyers we spoke w/(and have documentation of in chart: [D]ecaro/[D]oran) are defendant counsel, not patient's lawyer. In any case, we do not have [a] release for speaking with the above person.

Dr. Wiley wrote "Noted. JW" in the patient's log at 1:53 p.m.

The next day, Ms. Maldonado called Dr. Wiley's office at least two more times. At 12:18 p.m., Dr. Wiley's employee wrote a note in the patient log that "Dr. MELINDA MALDONADO called again today asking for Dr. Wiley. . . she wanted me to page Dr.

11

Wiley and I told her I cannot do that and she hung up." Dr. Wiley's employee notified the answering service that if someone named Dr. Maldonado attempted to page Dr. Wiley, that the answering service should forward those calls to the office and should not page Dr. Wiley.

At 12:23 p.m., the office manager made the following note in the patient log:

[A]nswering service called and [p]ut Dr. [M]aldonado through again since she was trying to reach [D]r. [W]iley at the hospital. I explained to her I am not paging the physician and that he has the message. [S]he stated it was urgent and I explained that again I am not paging him. She then stated how rude he is and that he has not returned the call. I told her that he is not going to since there is nothing on file from the patient that we can talk to her.

[S]he stated that all she wants him to do is change his hospital note, again I told her he is not going to do that. [S]he stated she will go through medical records at [BWMC] and she will track him down and make him change the note and she hung up.

At one point, Ms. Maldonado questioned Dr. Wiley's competence and intelligence and called him a "backwoods" physician. In addition to referring to herself as Dr. Maldonado, she also told Dr. Wiley's staff that she went to medical school.

**STANDARD OF REVIEW**

In an attorney discipline proceeding, this Court reviews for clear error a hearing judge's findings of fact and reviews without deference a hearing judge's conclusions of law. *See* Md. Rule 19-741(b)(2)(B) ("The Court [of Appeals] shall give due regard to the opportunity of the hearing judge to assess the credibility of witnesses."); *Attorney Grievance Comm'n v. Chanthunya*, 446 Md. 576, 588 (2016) ("This Court reviews for clear error a hearing judge's findings of fact." (citations omitted)); Md. Rule 19-741(b)(1) ("The Court of Appeals shall review de novo the [hearing] judge's conclusions of law.").

12

This Court determines whether clear and convincing evidence establishes that a lawyer violated an MLRPC. *See* Md. Rule 19-727(c) ("Bar Counsel has the burden of proving the averments of the petition [for disciplinary or remedial action] by clear and convincing evidence."). If exceptions to the findings of fact are filed, the Court "shall determine whether the findings of fact have been proven by the requisite standard of proof set out in Rule 19-727(c)." Md. Rule 19-741(b)(2)(B).

## DISCUSSION

The authority to discipline an out-of-state attorney who provides legal services in Maryland is provided in Maryland Rule 8.5(a)(2). "Under that rule, an attorney who is not admitted in Maryland is subject to the disciplinary authority of this Court if the attorney, among other things: (1) provides or offers to provide any legal services in Maryland." *Attorney Grievance Comm'n v. Ndi*, 459 Md. 42, 54 (2018). As a result, Ms. Maldonado is subject to discipline in Maryland. Bar Counsel did not except to any of the hearing judge's findings of fact or recommended conclusions of law. Ms. Maldonado takes numerous exceptions to the hearing judge's factual findings and recommended conclusions of law. Additionally, Ms. Maldonado excepts to the hearing judge's evaluation of the aggravating and mitigating factors found in this matter, contending that the finding of certain aggravating factors was not appropriate and that additional mitigating factors should have been found. Finally, as a preliminary matter, all of Ms. Maldonado's motions to dismiss are denied. We have reviewed the motions and Ms. Maldonado's contentions lack any merit.

13

***Exceptions to the Hearing Judge's Findings of Fact***

*Findings of Fact About the Unauthorized Practice of Law*

First, as to the unauthorized practice of law, Ms. Maldonado contends the hearing judge should have made additional findings of fact surrounding what Ms. Maldonado believes was a conspiracy between the Complainant Mr. Liskow, who represented Home Properties in the underlying mold litigation, Mr. Nace, her Maryland *pro hac vice* sponsor, and Bar Counsel to thwart the underlying litigation between Home Properties and Ms. Duren. Ms. Maldonado did not present any evidence to the hearing judge of this alleged conspiracy. In fact, Mr. Liskow specifically testified he waited until the conclusion of the underlying litigation to write a letter to notify Bar Counsel of Ms. Maldonado's misconduct. Furthermore, these allegations have no bearing on Ms. Maldonado's disciplinary hearing as Bar Counsel has conducted its own independent investigation into these allegations and has brought forth these charges against Ms. Maldonado. *See* Md. Rule 19-711(b). There is no evidence this disciplinary proceeding was instigated as a tactic in the underlying toxic tort litigation. Rather, the Complainant complied with Maryland's Rules and reported Ms. Maldonado's misconduct after interacting with her as opposing counsel in the tort litigation. Accordingly, we overrule Ms. Maldonado's exception.

Second, Ms. Maldonado contends the hearing judge should have made additional findings of fact surrounding her efforts to obtain Maryland counsel and find a *pro hac vice* sponsor while she was drafting the complaints and pursuing the appeal. She claims her pursuit of Maryland counsel permitted her to move forward with her representation of Ms. Duren without a *pro hac vice* sponsor in Maryland. Alternatively, Ms. Maldonado

contends the hearing judge should have made additional findings of fact that she informed Ms. Duren and her family that they would need to obtain new Maryland counsel for the appeal and that Ms. Maldonado was not available for the appellate work because she had to go out-of-state in order to care for her mother.

We conclude that the omission of these facts was not clearly erroneous. These omitted facts have no bearing on this Court's consideration of violations of Rule 5.5. *See Attorney Grievance Comm'n v. Moore*, 451 Md. 55, 75 (2017) (citing *Attorney Grievance Comm'n v. Sheinbein*, 372 Md. 224, 241 (2002) (A "hearing judge's omission of a factual finding is not clearly erroneous when the fact has 'little bearing on the outcome of [the] proceeding and is irrelevant.'"). As to her initial contention, Ms. Maldonado is correct that an attorney may render services in Maryland on a temporary basis if the attorney anticipates admission *pro hac vice*. Rule 5.5(c)(2) states:

> An attorney admitted in another United States jurisdiction, and not disbarred or suspended from practice in any jurisdiction, may provide legal services on a temporary basis in this jurisdiction that: are in or reasonably related to a pending or potential proceeding before a tribunal in this or another jurisdiction, if the attorney, or a person the attorney is assisting, is authorized by law or order to appear in such proceeding or reasonably expects to be so authorized[.]

However, Ms. Maldonado ignores Comment 10 to Rule 5.5 which expands on the proper application of Rule 5.5(c)(2) and states, "[e]xamples of such conduct include meetings with the client, interviews of potential witnesses, and the review of documents." Drafting the complaint and preparing multiple appellate filings clearly extends beyond the scope of rendering services on a temporary basis. Therefore, the additional fact that Ms.

15

Maldonado searched for Maryland counsel does not excuse her conduct and the hearing judge's omission was not clearly erroneous.

As to the alternative findings of fact Ms. Maldonado requested from the hearing judge, specifically that Ms. Maldonado informed Ms. Duren that she would need to find new counsel for her appeal and that Ms. Maldonado was not acting as counsel because her mother was sick, either of those findings would be contrary to the factual findings of the hearing judge. We conclude the hearing judge did not clearly err in finding that Ms. Maldonado continued to represent Ms. Duren in the appeal. "A hearing judge does not clearly err in finding a fact where 'there is any competent evidence to support the' finding of fact." *Attorney Grievance Comm'n v. Donnelly*, 458 Md. 237, 276 (2018) (quoting *Attorney Grievance Comm'n v. Merkle*, 440 Md. 609, 633 (2014)). The hearing judge is in the best position to make these types of credibility evaluations and we cannot find that the hearing judge was clearly erroneous. *See Attorney Grievance Comm'n v. Hodes*, 441 Md. 136, 181 (2014) ("We generally 'defer to the credibility findings of the hearing judge.'") (citing *Attorney Grievance Comm'n v. Agbaje*, 438 Md. 695, 722 (2014)). Ms. Duren testified that Ms. Maldonado drafted and filed the appellate documents with Ms. Duren's consent. Further, Ms. Duren stated she did not know how to file any of the documents herself and that they drafted and filed the documents together. The hearing judge evaluated the evidence and weighed Ms. Duren's testimony and Ms. Maldonado's testimony. We will not overrule the hearing judge's conclusion that Ms. Maldonado continued to represent Ms. Duren throughout the appellate proceedings.

16

As to Ms. Maldonado's allegations that she was unavailable due to her mother's illness, that evidence is more properly suited for mitigation. In any event, Ms. Maldonado provided no documentation, beyond her own testimony, of her time out-of-state. Therefore, the hearing judge did not clearly err in her findings and Ms. Maldonado's exceptions are overruled.

*Findings of Fact About Ms. Maldonado's Communications with Dr. Wiley's Office*

Ms. Maldonado believed the hearing judge should have found that Ms. Maldonado introduced herself as "Dr. Maldonado" and immediately clarified that she was an environmental attorney and toxic tort legal specialist. As evidence of this fact, Ms. Maldonado cites to the call log. Ms. Maldonado contends that she clearly disclosed that she was representing Ms. Duren in a legal matter and that she clearly stated she was an environmental attorney. She also contends that the hearing judge was incorrect that she sought alteration of her client's medical records. Further, she states that Ms. Duren's medical records already reflected that Ms. Duren was exposed to toxic mold for three years and that she was allergic to penicillin so alteration of the records would not have been necessary. Ms. Maldonado contends that the reason that she called Dr. Wiley's office was for two distinct reasons: (1) that she wanted to discuss the severity of Ms. Duren's condition due to toxic mold and (2) to try to obtain a letter from Dr. Wiley regarding Ms. Duren's condition to include in support of a motion for new trial. Ms. Maldonado claims she did not state she went to medical school and only wanted Dr. Wiley's staff to know she had

17

knowledge and a background in medical science to support her legal experience with toxic mold.

The hearing judge is in the best position to make these types of credibility evaluations. *See Hodes*, 441 Md. at 181. The hearing judge reviewed the evidence and testimony to reach the conclusion that Ms. Maldonado held herself out as a medical doctor to Dr. Wiley's office. Testimony from those working at Dr. Wiley's office and the patient log admitted into evidence support the hearing judge's conclusion. We cannot say the hearing judge's findings of fact involving Ms. Maldonado's interactions with Dr. Wiley's office staff were clearly erroneous. Therefore, Ms. Maldonado's exceptions are overruled.

### Exceptions to the Hearing Judge's Conclusions of Law

As a general statement supporting her exceptions, Ms. Maldonado contends that throughout the proceedings her intentions were altruistic and that she was always seeking to protect Ms. Duren and her legal rights. As described below, she also provided a more specific basis for the following exceptions as to each conclusion of law.

*Rule 1.1*

Rule 1.1 requires that an attorney "shall provide competent representation to a client." "Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation." R. 1.1. An attorney violates Rule 1.1 if she "fails to act or acts in an untimely manner, resulting in harm to his or her client." *Attorney Grievance Comm'n v. Brown*, 426 Md. 298, 319 (2012). Failure to take "necessary, fundamental steps to further the client's case" violates Rule 1.1. *Attorney Grievance Comm'n v. Garrett*, 427 Md. 209, 223 (2012). The hearing judge found Ms.

18

Maldonado violated Rule 1.1 when she failed to obtain the trial transcripts pursuant to Maryland Rule 8-413(a)(2) in order to proceed with Ms. Duren's appeal in the Court of Special Appeals. Ms. Maldonado's failure to obtain the transcripts caused Ms. Duren's appeal to be dismissed by the Court of Special Appeals pursuant to Maryland Rule 8-602.

Ms. Maldonado contends that she was never Ms. Duren's counsel for the appeal and thus was not required to ensure that the transcript was filed. We overrule Ms. Maldonado's exception to Rule 1.1. We affirmed the hearing judge's finding of fact that Ms. Maldonado represented Ms. Duren without a *pro hac vice* sponsor throughout the appellate process. The evidence clearly illustrates that Ms. Maldonado was not simply assisting Ms. Duren in her appeal but instead was directly representing Ms. Duren. Moreover, under this unauthorized practice of law, Ms. Duren was relying on Ms. Maldonado as her appellate counsel. As a result, Ms. Maldonado was responsible for obtaining the appropriate transcripts or terminating her representation of Ms. Duren.

Further supporting this violation by Ms. Maldonado is the fact that the Court of Special Appeals initially denied Home Properties' Motion to Dismiss so that Ms. Duren could "take all steps necessary to cause all transcripts necessary for this Appeal to be filed in the Circuit Court for Anne Arundel County on or before February 1, 2016." Despite this directive, Ms. Maldonado took no further action in the Court of Special Appeals and her failure eventually caused Ms. Duren to forfeit her right of appeal. Ms. Maldonado's failure to order the proper transcripts reflects a lack of competence and her exception is overruled. Therefore, we affirm the hearing judge's conclusion that Ms. Maldonado's failure to file a

transcript in the Court of Special Appeals to preserve her client's appeal provided clear and convincing evidence of a lack of competence in violation of Rule 1.1.

*Rule 4.1*

Rule 4.1(a) requires in part that "[i]n the course of representing a client an attorney shall not knowingly: (1) make a false statement of material fact or law to a third person[.]" Comment [1] to the Rule provides:

> An attorney is required to be truthful when dealing with others on a client's behalf. . . . A misrepresentation can occur if the attorney incorporates or affirms a statement of another person that the attorney knows is false. Misrepresentations can also occur by partially true but misleading statements or omissions that are the equivalent of affirmative false statements.

The hearing judge determined Ms. Maldonado twisted the truth and deliberately intended to mislead Dr. Wiley's office to obtain something on behalf of Ms. Duren. Specifically, in her dealings with Dr. Wiley's office, Ms. Maldonado did not clearly disclose that she was representing Ms. Duren in a legal matter and that her requests related to a pending trial. Further, Ms. Maldonado used the title "Doctor" which was a deliberate and calculated move that Ms. Maldonado intended to be misleading. Ms. Maldonado wanted Dr. Wiley's staff to think that she was a medical doctor and she further misled them when she informed them that "I went to med[ical] school." The hearing judge concluded Ms. Maldonado was in violation of Rule 4.1 as a result of these factual findings.

In excepting to the hearing judge's conclusion of law, Ms. Maldonado states that she clearly identified herself as Ms. Duren's environmental attorney and never identified herself as a physician. She stated she immediately clarified that she was an attorney representing Ms. Duren. Further, she states she never misled anyone or attempted to

20

mislead anyone. Rather, she wanted to speak with Dr. Wiley to discuss Ms. Duren's condition in order to convince him to support her motion for a new trial.

Ms. Maldonado's exception is inconsistent with her testimony. In fact, she testified that she identified herself as "Doctor Maldonado" so that she could "baby step her way in" because she often found doctors' office staff rude to her when she identifies herself as an attorney. Further, Ms. Maldonado's claim that she clearly identified herself as Ms. Duren's attorney is inconsistent with the fact that Dr. Wiley's staff was confused as to her identity and the purpose of her phone calls. The entries in the patient log illustrate the office's confusion as to Ms. Maldonado's identity.

The factual findings allow us to conclude that Ms. Maldonado held herself out as a medical doctor in an attempt to confuse Dr. Wiley's staff and gain access to Dr. Wiley. Ms. Maldonado knew she could not gain the same access if she identified herself as an attorney. We doubt that Ms. Maldonado would have used the title "Doctor" if she was calling any other professional office. Rule 4.1 encompasses misrepresentations that are "partially true but misleading statements or omissions." We are persuaded that there was clear and convincing evidence that Ms. Maldonado held herself out as a medical doctor to mislead the staff as to her identity. Accordingly, we agree with the hearing judge that clear and convincing evidence exists to conclude Ms. Maldonado violated Rule 4.1 and we overrule Ms. Maldonado's exception.

*Rule 4.4*

Rule 4.4(a) provides that "[i]n representing a client, an attorney shall not use means that have no substantial purpose other than to embarrass, delay, or burden a third person,

or use methods of obtaining evidence that the lawyer knows violate the legal rights of such a person." Comment [1] to the Rule states:

> Responsibility to a client requires an attorney to subordinate the interests of others to those of the clients, but that responsibility does not imply that an attorney may disregard the rights of third persons. . . . It is impractical to catalogue all such rights, but they include legal restrictions on methods of obtaining evidence from third persons and unwarranted intrusions into privileged relationships, such as the client-attorney relationship.

The hearing judge concluded that Ms. Maldonado's numerous phone calls over the course of two days harassed Dr. Wiley's staff and violated Ms. Duren's rights in violation of Rule 4.4. In her exception to the finding of a Rule 4.4 violation, Ms. Maldonado contends that she did not intentionally burden Dr. Wiley's office with the phone calls over the course of two days. She states the reason for the phone calls was legitimate and not to embarrass, delay, or burden anyone; rather the severity of Ms. Duren's condition warranted her conduct as a zealous advocate for her client.

Ms. Maldonado called Dr. Wiley's office and the hospital's answering service at least nine times over the course of two days. Her calls over those two days required the attention of multiple employees in Dr. Wiley's office and eventually involved the larger hospital answering system. As an experienced attorney in toxic tort litigation, Ms. Maldonado should have known that the Health Insurance Portability and Accountability Act ("HIPAA") Privacy Rule barred a doctor from discussing the information she was calling about. We do not condone Ms. Maldonado's tactic, yet, we do not believe there is clear and convincing evidence that Ms. Maldonado conduct arose to a violation of Rule 4.4.

This case is distinguishable from those in which we have found a violation of Rule 4.4. For example, in *Attorney Grievance Comm'n v. Cocco*, the attorney presented invalid subpoenas to Walmart employees in order to obtain a copy of a surveillance video. 442 Md. 1, 5 (2015). When the employees did not comply, the attorney threatened the employees with personal lawsuits. *Id.* We found facts supportive of a finding of a violation of Rule 4.4. *Id.* at 10. Likewise in *Attorney Grievance Comm'n v. Mixter*, we held an attorney violated Rule 4.4 when he "intentionally pursued the defendants' driving records without basis, causing his opposition to use time and resources to obtain protective orders as to their driving records, and delaying litigation, thereby violating Rule 4.4(a)." 441 Md. 416, 522 (2015). Here, while Ms. Maldonado's numerous calls required the attention of Dr. Wiley's office for two days, she never threatened the office with litigation or filed any motions. Further, while ill-advised, we believe that in Ms. Maldonado's mind she had a "purpose other than to embarrass, delay, or burden" Dr. Wiley's office. As a result, we do not find there was sufficient clear and convincing evidence of a violation of Rule 4.4(a) presented to the hearing judge.

*Rule 5.5*

Rule 5.5(a) provides that "a lawyer shall not practice law in a jurisdiction in violation of the regulation of the legal profession in that jurisdiction, or assist another in doing so." Ms. Maldonado claims special circumstances exist in which the complainant, Mr. Liskow, threatened her sponsoring attorney during the underlying litigation, causing her sponsoring attorney to withdraw as appellate counsel. Further, according to Ms. Maldonado this alleged threat caused her sponsoring attorney to lie when he testified during

the disciplinary hearing that he told Ms. Maldonado that he was withdrawing as counsel. She contends this evidence absolves her of wrongdoing especially because of the "life and death circumstances of Ms. Duren." She also contends she was always motivated by her desire to assist Ms. Duren and protect her legal rights.

As to the first contention, there is no evidence in the record to support Ms. Maldonado's bald assertion that Mr. Liskow or Mr. Nace engaged in any misconduct. The evidence does not suggest, and we do not accept, that Mr. Liskow or Mr. Nace acted unethically by informing Bar Counsel of Ms. Maldonado's conduct during the underlying lawsuit. Furthermore, none of Ms. Maldonado's exceptions excuse her unauthorized practice of law in Maryland.

The hearing judge concluded Ms. Maldonado engaged in the unauthorized practice of law during multiple time periods during her representation of Ms. Duren. "To determine whether an individual has engaged in the practice of law, the focus of the inquiry should 'be on whether the activity in question required legal knowledge and skill in order to apply legal principles and precedent.'" *Attorney Grievance Comm'n v. Hallmon*, 343 Md. 390, 397 (1996) (citations omitted). "[T]he unauthorized practice of law includes utilizing legal education, training, and experience to apply the special analysis of the profession to a client's problem." *Attorney Grievance Comm'n v. Barneys*, 370 Md. 566, 580 (2002) (cleaned up) (citations omitted). "Where trial work is not involved but the preparation of legal documents, their interpretation, the giving of legal advice, or the application of legal principles to problems of any complexity, is involved, these activities are still the practice of law." *Hallmon*, 343 Md. at 397 (citations omitted).

Here, Ms. Maldonado was not licensed to practice law in Maryland during the entire time that she represented Ms. Duren.[3] While unlicensed in Maryland and without a *pro hac vice* sponsor, Ms. Maldonado drafted and filed numerous pleadings in the underlying action. The fact that she signed them on Ms. Duren's behalf as "*pro se*" does not absolve Ms. Maldonado from the unauthorized practice of law. In fact, we find her conduct more culpable because she was deceiving the court. Ms. Duren was never proceeding *pro se*, but instead Ms. Maldonado was using that description to hide the fact that she was practicing in Maryland without a license. Out-of-state counsel is not permitted to hide his or her representation of a client through the use of *pro se* filings when, as was present in this case, the out-of-state attorney is drafting all of the pleadings, conducting all of the research for the pleadings, placing their client's signature on the pleadings, placing the statement that the client was proceeding *pro se* on the pleadings, and personally filing the pleadings on his or her client's behalf.[4] The evidence shows that Ms. Maldonado, without

---

[3] We do recognize that she was authorized to practice law in Maryland during the *pro hac vice* admission period.

[4] We also note this behavior is different from what has been coined "ghostwriting" across various jurisdictions. "Ghost-writing is best described as when a member of the bar represents a *pro se* litigant informally or otherwise, and prepares pleadings, motions, or briefs for the *pro se* litigant which the assisting lawyer does not sign, and thus escapes the professional, ethical, and substantive obligations imposed on members of the bar." *In re Dreamplay, Inc.*, 534 B.R. 106, 120 (Bankr.D.Md.2015) (quoting *In re Mungo*, 305 B.R. 762, 767 (Bankr.D.S.C.2003)). This Court has not been presented with an attorney discipline case specific to ghost-writing. In 2015, Rule 1.2 was amended to permit Maryland attorneys to agree to limit the scope of the representation to clearly defined specific tasks or objectives, such as the drafting of document. However, in this matter, Rule 1.2 or any argument of ghostwriting is inapplicable. Ms. Maldonado was practicing in Maryland without a license or *pro hac vice* admission. Furthermore, there was no limited scope representation agreement and Ms. Maldonado was responsible for all pleadings filed

25

a license in Maryland or a *pro hac vice* sponsor, was acting as counsel for Ms. Duren. There is no evidence that Ms. Duren acted without Ms. Maldonado at any point during the action. We agree with the hearing judge that there is clear and convincing evidence that Ms. Maldonado violated Rule 5.5(a) and we overrule Ms. Maldonado's exceptions.

*Rule 8.4*

Rule 8.4 provides, in relevant part, that: "[i]t is professional misconduct for an attorney to: (a) violate or attempt to violate the Maryland Attorneys' Rules of Professional Conduct; . . . (c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation; [and] (d) engage in conduct that is prejudicial to the administration of justice." The hearing judge determined, and we affirmed, that Ms. Maldonado violated Rules 1.1, 4.1(a), 5.5(a) and 8.4(c)–(d), then she also violated Rule 8.4(a).[5] A finding as to each one of these violations on its own could serve as a basis for a violation of 8.4(a). *Attorney Grievance Comm'n v. Nelson*, 425 Md. 344, 363 (2012) ("Rule 8.4(a) is violated when other Rules of Professional Conduct are breached."). Ms. Maldonado filed no

---

before the Maryland courts. Ms. Maldonado's conduct does not qualify as ghostwriting nor does it fall under the scope of Rule 1.2.

[5] The hearing judge also found sufficient evidence for a Rule 4.4(a) violation, however, as described earlier, we concluded that there was insufficient clear and convincing evidence of a violation of Rule 4.4(a).

exception to 8.4(a). Therefore, this Court agrees with the hearing judge's conclusion that there is clear and convincing evidence that Ms. Maldonado violated 8.4(a).

The hearing judge found Ms. Maldonado violated 8.4(c) by misrepresenting herself in her communications with Dr. Wiley's office.

> A broad universe of misbehavior is encompassed by MLRPC 8.4(c). Dishonesty is the broadest of the four terms, and encompasses, *inter alia*, conduct evincing a lack of honesty, probity or integrity of principle; [a] lack of fairness and straightforwardness. . . . Thus, what may not legally be characterized as an act of fraud, deceit or misrepresentation may still evince dishonesty.

*Attorney Grievance Comm'n v. Thomas*, 440 Md. 523, 555 (2014) (internal citations and quotations omitted). "A violation of 8.4(c) must be the result of *intentional* misconduct." *Attorney Grievance Comm'n v. Moore*, 451 Md. 55, 86 (2017) (citing *Attorney Grievance Comm'n v. Mungin*, 439 Md. 290, 310 (2014) ("It is well settled that this Court will not find a violation of [Rule] 8.4(c) when the attorney's misconduct is the product of negligent rather than intentional misconduct.") (quoting *Attorney Grievance Comm'n v. DiCicco*, 369 Md. 662, 684 (2002)).

Ms. Maldonado maintains she did not engage in conduct that involved dishonesty, fraud, deceit or misrepresentation. She states she introduced herself as Dr. Maldonado but immediately clarified that she was an environmental attorney and that she represented Ms. Duren. She contends the record in this case supports the opposite conclusion reached by the hearing judge. Ms. Maldonado also contends that the hearing judge was incorrect that the use of "Doctor" was deliberately and intentionally misleading. She stated that pursuant to Rule 7.1 and the American Bar Association ("ABA"), lawyers who earned a juris doctor

degree may refer to themselves as doctors.[6]  She states it is an accurate title because she

has received her juris doctor degree.

This Court has not established in an opinion or within the Rules specific guidance

whether there are instances when an attorney may refer to himself or herself as a doctor.[7]

However, we require adherence to Rule 7.1, that states:

> An attorney shall not make a false or misleading communication about the attorney or the attorney's services. A communication is false or misleading if it:
>
> (a) contains a material misrepresentation of fact or law, or omits a fact necessary to make the statement considered as a whole not materially misleading;
>
> (b) is likely to create an unjustified expectation about results the attorney can achieve, or states or implies that the attorney can achieve results by means that violate the Maryland Attorneys' Rules of Professional Conduct or other law; or

---

[6] In response to Ms. Maldonado's contention that the ABA permits her to refer to herself as a doctor, we note that the ABA is not binding on this Court.  Further, the ABA's stance on this issue is more nuanced than Ms. Maldonado's contentions.  The ABA's guidance on this issue states that the ABA Model Rules of Professional Conduct, which superseded the Model Code in 1983, does not directly address this issue.  As a result, state ethics opinions are the best guidance on this issue.  *See* Kathleen Maher, *Lawyers Are Doctors, Too*, 92 A.B.A.J. 24 (2006).

[7] In evaluating this issue, we reviewed an opinion from the Committee on Ethics from the Maryland State Bar Ass'n, Inc., Ethics Docket No. 2013-02.  In the opinion, the Committee was asked to advise whether it is ethically permissible for an attorney to use esquire after his or her name, even when acting in a nonlegal capacity.  *Id.*  The opinion stated, "[w]e agree . . . that there is no per se rule that would prohibit an attorney from attaching "Esq." to his or her name when not practicing as a lawyer . . . the attorney must ensure that he or she does not use that term in a context in which a person could reasonably believe that the attorney is acting as a lawyer when the attorney is not doing so." *Id.*  Likewise, when Ms. Maldonado referred to herself as a doctor, she needed to ensure that she was not using the term in a way in which a reasonable person could believe she was representing herself as a medical doctor.

(c) compares the attorney's services with other attorney's services, unless the comparison can be factually substantiated.

Thus, under the restrictions on attorney communications proscribed by Rule 7.1, we do not need to decide in this case whether there is any appropriate instance when an attorney may refer to themselves as a doctor. It is clear that "an attorney shall not make a false or misleading communication about the attorney or the attorney's services." Rule 7.1.

In this instance, we are persuaded that Ms. Maldonado's conduct was a violation of this Rule. Ms. Maldonado made a material misrepresentation when she intentionally referred to herself as a doctor while calling a medical doctor's office in order to bypass the medical doctor's office staff to speak to the medical doctor about her client. The record contains clear and convincing evidence that her misrepresentations to Dr. Wiley's office were intentional. Ms. Maldonado testified that she sometimes uses the title of "Doctor" to hide the fact that she is an attorney because she has found doctor's offices are hesitant to speak with an attorney. The record supports that Ms. Maldonado misrepresented herself as a medical doctor and failed to adequately identify herself as an attorney. As a result, we find there is clear and convincing evidence that Ms. Maldonado violated Rule 8.4(c) and we overrule her exceptions.

In addition, the hearing judge concluded that Ms. Maldonado violated Rule 8.4(d). Conduct which is "likely to impair public confidence in the profession, impact the image of the legal profession and engender disrespect for the court" is conduct prejudicial to the administration of justice. *Attorney Grievance Comm'n v. Childress*, 360 Md. 373, 381–82 (2000). Courts apply an objective standard to determine if Ms. Maldonado's misconduct

would "negatively impact a reasonable member of the public's perception of the legal profession." *Attorney Grievance Comm'n v. Basinger*, 441 Md. 703, 720 (2015) (cleaned up).

Ms. Maldonado contends she has not negatively impacted the public's perception of the legal profession. She cites to Ms. Duren's testimony that "there is no lawyer like [her]" and to the fact that she did not charge any fees to Ms. Duren. Further, she cites to her strong reputation for competency in toxic torts and mold litigation. She states that she is in the top one percent of attorneys[8] and that she has been awarded this distinction year after year. She contends that she is respected by clients and colleagues. Finally, in her interactions with Dr. Wiley's office, she contends that while she was frustrated, she never raised her voice at the office staff.

We agree with the hearing judge that Ms. Maldonado's interactions with Dr. Wiley's office would negatively affect a reasonable person's perception of the legal profession in violation of Rule 8.4(d). While Ms. Maldonado never raised her voice, she called Dr. Wiley's office numerous times over the course of two days. She also made disparaging remarks about Dr. Wiley. We are persuaded that there is clear and convincing evidence that Ms. Maldonado's misconduct would negatively impact a reasonable member of the public's perception of the legal profession in violation of Rule 8.4(d) and we overrule Ms. Maldonado's exception.

---

[8] Ms. Maldonado held up a letter during oral argument and has filed exhibits which show that this recognition was from the National Association of Distinguished Counsel.

**SANCTION**

In weighing the appropriate sanction for an attorney disciplinary proceeding, this Court is "guided by our interest in protecting the public and the public's confidence in the legal profession." *Attorney Grievance Comm'n v. Pennington*, 387 Md. 565, 595 (2005) (citing *Attorney Grievance Comm'n v. Powell*, 369 Md. 462, 474 (2002)). "As we have often stated, the purpose of attorney disciplinary proceedings is to protect the public and deter other lawyers from engaging in misconduct rather than simply to punish the lawyer." *Attorney Grievance Comm'n v. Powell*, 461 Md. 189, 226 (2018) (citing *Attorney Grievance Comm'n v. Mollock*, 450 Md. 133, 158 (2016)). "In addition to the nature of the violations and the intent with which they were committed, we also consider any mitigating or aggravating circumstances." [9] *Attorney Grievance Comm'n v. Woolery*, 456

---

[9] We have recognized the following aggravating factors:

(1) prior attorney discipline; (2) a dishonest or selfish motive; (3) a pattern of misconduct; (4) multiple offenses; (5) bad faith obstruction of the attorney disciplinary proceeding by intentionally failing to comply with the rules or the order of the disciplinary agency; (6) submission of false evidence, false statements, or other deceptive practices during the disciplinary process; (7) refusal to acknowledge the wrongful nature of conduct; (8) vulnerability of the victim; (9) substantial experience in the practice of law; (10) whether he or she displayed indifference to making restitution (11) illegal conduct, including that involving the use of controlled substances; and (12) likelihood of repetition of the misconduct.

*Attorney Grievance Comm'n v. Allenbaugh*, 450 Md. 250, 277–78 (2016) (cleaned up). We have recognized the following mitigating factors:

(1) the absence of prior attorney discipline; (2) the absence of a dishonest or selfish motive; (3) personal or emotional problems; (4) timely good faith efforts to make restitution or to rectify the misconduct's consequences; (5) full and free disclosure to Bar Counsel or a

Md. 483, 499–500 (2017). The Court considers any aggravating factors that are proven by clear and convincing evidence and mitigating factors that are proven by a preponderance of the evidence. Md. Rule 19-727(c).

The hearing judge found the following aggravating factors: a dishonest or selfish motive; multiple offenses; bad faith obstruction of the disciplinary proceeding by intentionally failing to comply with the rules or order of the disciplinary agency; submission of false evidence, false statements, or other deceptive practice during the disciplinary process; refusal to acknowledge the wrongful nature of conduct; substantial experience in the practice of law; illegal conduct; and likelihood of repetition of misconduct in this case. Ms. Maldonado filed an exception to each aggravating factor except substantial experience and illegal conduct.

In considering a dishonest or selfish motive, the hearing judge found Ms. Maldonado's motive dishonest. The hearing judge determined Ms. Maldonado knew that

---

cooperative attitude toward the attorney discipline proceeding; (6) inexperience in the practice of law; (7) character or reputation; (8) a physical disability; (9) a mental disability or chemical dependency, including alcoholism or drug abuse, where: (a) there is medical evidence that the lawyer is affected by a chemical dependency or mental disability; (b) the chemical dependency or mental disability caused the misconduct; (c) the lawyer's recovery from the chemical dependency or mental disability is demonstrated by a meaningful and sustained period of successful rehabilitation; and (d) the recovery arrested the misconduct, and the misconduct's recurrence is unlikely; (10) delay in the attorney discipline proceeding; (11) the imposition of other penalties or sanctions; (12) remorse; (13) remoteness of prior violations of the MLRPC; and (14) unlikelihood of repetition of the misconduct.

*Id.*

she could not represent Ms. Duren in Maryland without a *pro hac vice* sponsor. Evidence was presented that Ms. Maldonado informed Ms. Duren when they first met and in the emails between Ms. Maldonado and Mr. Nace that Ms. Maldonado could not practice law in Maryland. Further, Ms. Maldonado concealed her representation of Ms. Duren from the Courts by having Ms. Duren sign her name, using Ms. Duren's email address, and having Ms. Duren state in the pleadings that she was proceeding *pro se*. Ms. Maldonado countered the hearing judge's conclusions, by stating that she knew that she needed a Maryland *pro hac vice* sponsor and that she only sought to protect the rights of an extremely ill individual who was in dire need. We agree with the hearing judge. Ms. Maldonado's contentions do not rebut the hearing judge's findings. Her statements, regardless of the validity, do not excuse the fact that she concealed from the courts that she drafted and filed pleadings in Maryland on behalf of her client when she was not a licensed attorney in this State.

The hearing judge also found as an aggravating factor that Ms. Maldonado was in violation of multiple rules. Ms. Maldonado contends this finding was not proper because of her outstanding record as an attorney and that she has been consistently nominated by a judicial review board to the nation's top one percent of attorneys. Nonetheless, while Ms. Maldonado's high reputation and previous awards may be true, they do not absolve Ms. Maldonado from the finding of multiple violations in this matter. *See Attorney Grievance Comm'n v. Mixter*, 441 Md. 416, 530 (2015) ("Factor (d), 'multiple offenses,' is implicated when an attorney violates multiple disciplinary rules.") (citation omitted).

The hearing judge found an additional aggravating factor of bad faith obstruction of the disciplinary proceeding by intentionally failing to comply with the rules or order of the

disciplinary agency. Ms. Maldonado evaded service for four months and forced the Petitioner to serve the Client Protection Fund of the Bar of Maryland. Ms. Maldonado initially failed to file an answer in this action causing Bar Counsel to file a request for an order for default. Even after eventually filing an answer, Ms. Maldonado failed to timely respond to Bar Counsel's discovery and forced Bar Counsel to file for sanctions. Finally, when Bar Counsel propounded discovery on January 26, 2018, Ms. Maldonado waited until April, past the deadline, to file incomplete responses. As to this factor, Ms. Maldonado claims she did not evade service. She states Bar Counsel acted unethically. She states she had responded in good-faith to all requests and responses during this entire proceeding. Ms. Maldonado's contentions are without merit. Ms. Maldonado evaded service, failed to accept service electronically, and failed to provide sufficient discovery. We agree with the hearing judge that Bar Counsel proved this aggravating factor by clear and convincing evidence.

Ms. Maldonado's inconsistent testimony concerning her bar admissions in other states supports the aggravating factor of submission of false evidence, false statements, or other deceptive practice during the disciplinary process. The hearing judge found that during trial, Ms. Maldonado testified that she was a member of the Bars of the District of Columbia and Texas. Later, she attempted to clarify that she was only licensed in the District of Columbia but that she could obtain reciprocity in Texas. During cross-examination, Ms. Maldonado changed her story again, stating that she just needed to pay her dues in Texas. Further, Ms. Maldonado testified that she graduated from law school in December 1996 and took the Texas bar in February 1997 but did not pass. In her

deposition, Ms. Maldonado stated she did not take the bar exam after graduating from law school because she wanted to focus on working full-time. Ms. Maldonado contends that her testimony was not deceptive or false and that her testimony clarified her admission status. She also believed the Texas bar exam question during deposition was irrelevant and prejudicial. We agree with the hearing judge that Bar Counsel proved this aggravating factor by clear and convincing evidence.

The hearing judge found that Ms. Maldonado refused to acknowledge the wrongful nature of her conduct which is an additional aggravating factor. She has continued to blame Dr. Wiley's staff calling them rude and disrespectful. Moreover, Ms. Maldonado filed a Complaint in the United States District Court for the District of Maryland against the Attorney Grievance Commission and an Assistant Bar Counsel alleging defamation and seeking damages. In this Complaint, Ms. Maldonado claimed that Bar Counsel's charges were false. The hearing judge concluded this conduct, along with her testimony, provided ample evidence that Ms. Maldonado does not recognize her conduct as wrongful. In response, Ms. Maldonado stated that she is personally hurt by this matter and that she has dismissed the good-faith complaint in the District Court.

We agree with the hearing judge that Bar Counsel proved the aggravating factor of refusal to acknowledge the wrongful nature of the conduct. *See Mixter*, 441 Md. at 530. Ms. Maldonado has yet to acknowledge *any* wrongdoing. At oral argument, Ms. Maldonado did not show remorse for her actions and instead blamed everyone but herself

for this disciplinary action.[10] Ms. Maldonado appears not to understand that she is before us not because of some conspiracy between Home Properties, Bar Counsel, and her sponsoring attorney, but instead because of her own wrongdoing. We are concerned that she does not appear to understand the wrongful nature of her conduct.

The hearing judge found substantial experience in the practice of law as an aggravating factor. We agree that Ms. Maldonado has substantial experience as an attorney in the District of Columbia in toxic tort litigation. Ms. Maldonado does not except to this aggravating factor.

The hearing judge found the aggravating factor of illegal conduct because Ms. Maldonado engaged in the unauthorized practice of law, in violation of § 10-601(a) of the Business Occupations & Professions of the Maryland Code, when she drafted Ms. Duren's complaint, amended complaint, and any other appellate pleadings that she drafted without a *pro hac vice* sponsor. Md. Code (1989, 2018 Repl. Vol.), Business Occupations & Professions § 10-601(a). Ms. Maldonado does not except to this aggravating factor. We agree that Bar Counsel has proven this aggravating factor by clear and convincing evidence.

The final aggravating factor the hearing judge found was the likelihood of a repetition of the misconduct because Ms. Maldonado refuses to acknowledge that her conduct was wrong. The hearing judge believed this refusal makes it highly likely that she

---

[10] For example, at oral argument, Ms. Maldonado begins by stating, "[a]nd I'd like to start out . . . to say that I do believe that this was a political hit against me. . . ."

will repeat the actions again. In response, Ms. Maldonado states there is no chance of repetition. She states that this proceeding was started from the "unethical and evil foul play" by the Complainant.[11] This Court agrees with the hearing judge. Rather than accept responsibility, Ms. Maldonado sees herself as the sole advocate left for Ms. Duren and others in Ms. Duren's situation. We are persuaded that if a case with similar facts as Ms. Duren's case appeared, that Ms. Maldonado might well take the case and engage in similar conduct, to the detriment of her client. Accordingly, we affirm the hearing judge's finding of the aggravating factor that such misconduct is likely to occur again.

Among the factors for mitigation, the hearing judge found that Ms. Maldonado had no public disciplinary record in any jurisdiction. Further, that she had an outstanding reputation as an experienced practitioner of toxic torts and mold litigation. Bar Counsel does not except to these findings. Ms. Maldonado claims the hearing judge should have found twenty additional mitigating factors, most of which tout her own merits or denigrate the character or conduct of her sponsoring counsel, opposing counsel in the toxic mold litigation, Bar Counsel, and the Commission.[12] The majority of Ms. Maldonado's

---

[11] We reiterate that we do not find there was any misconduct on the part of the Complainant.

[12] These additional mitigating factors include some that are recognized by this Court and others that are not recognized by this Court. In total the list includes: (1) absence of prior attorney discipline; (2) "excellent legal talents, character, and integrity"; (3) "witnesses in the hearing testified that [she] is the Number 1 Toxic Mold Attorney in the Nation"; (4) "100% Win Record when serving as Lead Counsel"; (5) "unethical sabotage by complainant"; (6) "James Liskow unethically bullied and threatened Chris Nace, Respondent's Maryland supervising attorney, behind my back"; (7) "Complainant, James Liskow, unethically filed this defamatory grievance against me, the Respondent, as an unethical litigation tactic"; (8) "James Liskow, unethically filed this defamatory grievance against me, the Respondent, as an unethical litigation tactic"; (9) "Complainant, James

mitigating factors are factual findings or matters irrelevant to this proceeding. We do not believe there are additional relevant mitigating factors in this matter.

Bar Counsel recommended that we disbar Ms. Maldonado for her multiple violations of the Rules and the numerous aggravating factors found in this case. Bar Counsel considers Ms. Maldonado's core violations that support disbarment are Rules 4.1(a), 5.5(a), and 8.4(c) and (d) because they demonstrate that Ms. Maldonado's misconduct was dishonest, deceitful, and prejudicial to the administration of justice. *See Attorney Grievance. Comm'n v. Vanderlinde*, 364 Md. 376, 418 (2001) ("Unlike matters relating to competency, diligence and the like, intentional dishonest conduct is closely entwined with the most important matters of basic character to such a degree as to make intentional dishonest conduct by a lawyer almost beyond excuse. Honesty and dishonesty are, or are not, present in any attorney's character. Disbarment ordinarily should be the

---

Liskow, never called Respondent to get the truth/facts"; (10) "the Attorney Grievance Commission of Maryland unethically aided and abetted Complainant. . ."; (11) "The AGC of Maryland horrifically and illegally never called Respondent nor Ms. Duren to get the facts."; (12) "Improper withdrawal by Christopher Nace, the Maryland sponsoring attorney of Respondent, Ms. Maldonado"; (13) "Complainant, James Liskow, and Chris Nace, sabotaged the mold tester, Jeff Pace."; (14) "Legal error by Judges at all three levels in Maryland due to lack of mathematical and scientific knowledge"; (15) "Legal errors by Respondent's lawyers. Ineffective assistance of counsel and price gauging by all lawyers."; (16) "Heroic efforts by Respondent, Ms. Maldonado, to save Ms. Duren's case including finding second Maryland and United States Supreme Court barred attorney, Relinda Louisy, to petition the U.S. Supreme Court"; (17) "Thus, unethical Complainant's defamatory grievance interfered with the underlying toxic mold case from beginning to end. This is a disgusting, illegal litigation tactic."; (18) "The AGC of Maryland as mentioned, unethically interfered throughout the underlying toxic mold litigation"; (19) absence of a dishonest or selfish motive; (20) "Sudden Stage IV diagnosis of Respondent's Ms. Maldonado's mother on December 8th, 2015, and her impending death in February 2016."

sanction for intentional dishonest conduct."). Bar Counsel also relies on *Attorney Grievance Comm'n v. Barneys*, 370 Md. 566 (2002), a case where we disbarred an attorney who engaged in the unauthorized practice of law and other intentional misconduct. Finally, Bar Counsel notes the multiple aggravating factors in this case and that none of the mitigating factors present compelling extenuating circumstances warranting a lesser sanction.

Ms. Maldonado recommends that this Court dismiss the petition and take no remedial action. She maintains she was simply protecting the rights of her client and contends this proceeding was initiated due to the Complainant's impure motives that then were improperly pursued by Bar Counsel. She provides no authority to support this recommendation.

In this matter, the hearing judge found and we affirmed violations of both unauthorized practice of law *and* intentionally dishonest misconduct. For either of these violations individually, "this Court has repeatedly ordered disbarment absent compelling extenuating circumstances." *Attorney Grievance Comm'n v. Ghatt*, 461 Md. 228, 277 (2018). "Conduct 'involving dishonesty, fraud, or deceit, carries the risk of the ultimate sanction by this Court.'" *Attorney Grievance Comm'n v. Keiner*, 421 Md. 492, 523 (2011) (quoting *Attorney Grievance Comm'n v. White*, 354 Md. 346, 366 (1999)). "In unauthorized practice of law cases, 'we primarily consider[ ] factors of deterrence, whether the respondent's conduct was willful and deliberate, and whether the respondent cooperated with Bar Counsel's investigations.'" *Attorney Grievance Comm'n v. Shephard*,

444 Md. 299, 339 (2015) (quoting *Attorney Grievance Comm'n v. Shryock*, 408 Md. 105, 126 (2009)).

For a prior case where both unauthorized practice of law and intentionally dishonest misconduct were found, Bar Counsel directed us to *Attorney Grievance Comm'n v. Barneys*, 370 Md. 566 (2002) in support of disbarment. In *Barneys*, the attorney was barred in several state and federal jurisdictions. 370 Md. at 571–72. The attorney was not barred in Maryland, but opened a law office and entered his appearance in five cases in Maryland state court. *Id.* The hearing judge also found the attorney engaged in multiple instances of dishonest and deceitful misconduct. *Id.* at 574. We concluded:

> Based on the Court's trend of disbarring attorneys for unauthorized practice violations under [Rule] 5.5(a) violations, Respondent's multiple representation of clients in Maryland state courts, his deceptive conduct regarding the Sanchez/Gates Bail Bonds incident, the misrepresentations to Bar Counsel's investigator and on his Petition for admission, and the relative insubstantiality of any possibly mitigating circumstances, disbarment is the appropriate sanction.

*Id.* at 592.

Likewise, in *Attorney Grievance Comm'n v. Alsafty*, 379 Md. 1 (2003) we held that disbarment was an appropriate sanction when, among other things, the attorney who was not authorized to practice law in Maryland represented multiple clients in civil cases, filed twenty pleadings in Maryland courts, and failed to inform clients of his limitations. *Id.* at 7–8.

More recently, in *Attorney Grievance Comm'n v. Shephard*, this Court disbarred an attorney unlicensed to practice in Maryland who became managing attorney of a Maryland law firm and met with clients. 444 Md. 299, 343 (2015). In determining the appropriate

sanction, this Court evaluated the attorney's conduct in *Shephard* in relation to *Barneys* and *Alsafty*. While the Court noted that the conduct in *Shephard* did not amount to that of *Barneys* and Alsafty, the Court ultimately concluded that disbarment was an appropriate sanction in *Shephard* as well. We stated:

> We note that both [*Barneys* and *Alsafty*] involved an unlicensed attorney's appearance in state court actions and intentional deceitful or dishonest conduct in violation of 8.4(b) and (c). By contrast, in this case, Respondent did not appear in state court on behalf of any client, nor has Respondent been found to have violated [Rule] 8.4(b) or (c). In addition, though the facts of this case demonstrate neither a failure to cooperate with Bar Counsel nor willful and deliberate dishonest or deceitful behavior, it is clear that Respondent willfully and deliberately assumed responsibilities as a "Managing Attorney" in a law firm in Maryland, met with clients in Maryland, and undertook the representation of those clients in Maryland. In doing so, she misled clients and the general public by failing to disclose the fact that she was not licensed to practice law in Maryland. Further, during Respondent's tenure as "Managing Attorney," several clients paid fees to Gilmore and did not receive the same services that they were promised. As an attorney with 18 years of experience, albeit practicing in other states, we would expect Respondent to understand the nature of her actions and the responsibilities related thereto. Moreover, as Petitioner pointed out, Respondent applied for admission to the Maryland Bar at some point during her tenure at Glenmore, indicating her awareness that she was required to practice in this State.

*Id.* at 341–42 (cleaned up).

We acknowledge that the facts of this proceeding are unique in that Ms. Maldonado's conduct was not as egregious as some of these prior cases concerning unauthorized practice of law in Maryland. Ms. Duren was Ms. Maldonado's only Maryland client and Ms. Maldonado did not collect any fees from Ms. Duren. Ms. Maldonado acknowledged that she could not practice in Maryland without a *pro hac vice* sponsor and at times during this litigation had a *pro hac vice* sponsor. Unlike many of the

41

cases before this Court when Rule 5.5 is violated, Ms. Maldonado has not established an office in Maryland, produced any letterhead inferring a Maryland license, or advertised to the public that she is authorized to practice in Maryland.

However, while the facts in this proceeding are unique, we still find our prior cases on the unauthorized practice of law instructive. We find similarities between this case and *Barneys, Alsafty,* and *Shephard*. First, Ms. Maldonado represented Ms. Duren in active litigation. In fact, Ms. Maldonado is more culpable because she used the guise of "*pro se*" filings to work around the absence of a *pro hac vice* sponsor. We also have concluded that Ms. Maldonado violated Rule 8.4(c), and the record is filled with instances of Ms. Maldonado failing to respond to bar counsel and failing to accept responsibility for her actions. Finally, as in *Shephard*, Ms. Maldonado has been practicing for many years and we expect Ms. Maldonado to understand the wrongful nature of her action. Also impacting our conclusion is the fact that Ms. Maldonado's conduct in failing to order the transcripts caused Ms. Duren to lose her right of appeal in the mold litigation case.

Based upon our review of the record, we agree with Bar Counsel that disbarment is the appropriate sanction. Under the circumstances of this case, and given the numerous aggravating factors, disbarment is appropriate "to protect the public and the public's confidence in the legal profession." *Attorney Grievance Comm'n v. Allenbaugh*, 450 Md. 250, 277 (2016) (citation omitted). Ms. Maldonado's unauthorized practice of law, refusal to accept any responsibility for her actions, and avoidance of this disciplinary action reflect

adversely on her honesty and trustworthiness. Without any compelling extenuating circumstances, we conclude disbarment is the only appropriate sanction.

**IT IS SO ORDERED; RESPONDENT SHALL PAY ALL COSTS AS TAXED BY THE CLERK OF THIS COURT, INCLUDING COSTS OF ALL TRANSCRIPTS, PURSUANT TO MARYLAND RULE 19-709(d), FOR WHICH SUM JUDGMENT IS ENTERED IN FAVOR OF THE ATTORNEY GRIEVANCE COMMISSION AGAINST MELINDA MALDONADO.**